■ OGDENSBURG BUILDING SUPPLY, INC., Appellant, v LUMBER MUTUAL INSURANCE COMPANY, Respondent, et al., Defendant. — Appeal from an order of the Supreme Court at Special Term (Crangle, J.), entered September 15, 1983 in St. Lawrence County, which, *inter alia,* granted defendant Lumber Mutual Insurance Company's motion for summary judgment dismissing the complaint. ¶ Plaintiff seeks to recover the sum of $112,004.67 on a fire insurance policy issued by defendant Lumber Mutual Insurance Company in September, 1981 covering a lumberyard owned by plaintiff located in the City of Ogdensburg, St. Lawrence County. For at least five years prior to 1981, defendant had provided fire insurance to plaintiff. In early 1981 defendant's agent, Robert Tomak,[*] advised plaintiff's president, John Ashley, that a savings in insurance premiums could be had if the policy held by plaintiff on the Ogdensburg lumberyard were consolidated with policies on other properties held by plaintiff in Massena, Canton and Potsdam. Tomak also informed Ashley that the existing coverage on those properties was insufficient. ¶ Thereafter, in February, 1981, defendant conducted an appraisal of the buildings located at the Ogdensburg lumberyard. The appraisal report assigned values to each of the buildings and estimated the amount of insurance needed for each. The report was communicated to plaintiff in a letter which contained the following admonition: "This estimate relates to Buildings only. Since other property commonly insured may also require adequate insurance such as stock, machinery and equipment, you should ascertain the values thereof and be sure to carry a sufficient amount of insurance, to avoid being penalized by the co-insurance clause." The report placed a total insurable value of $260,987 on the real property consisting of four buildings. ¶ A consolidated policy was issued effective September 1, 1981. It contained a 90% coinsurance clause and provided coverage for the Ogdensburg lumberyard of $220,000 for both real and personal property under the heading "Blanket Business Real and Personal Property". The policy also provided comprehensive general liability and products liability coverage at all locations. ¶ On December 8, 1981, one of the buildings was damaged by fire. The loss was assessed at $211,054.05. In adjusting the loss, defendant found the before-loss value of the insured lumberyard buildings and the personal property on the premises to be $520,614.50. After applying the coinsurance clause, defendant company paid plaintiff $99,049.30 on its claim. Plaintiff disagreed, claiming that it should have been paid the full amount of its loss. This suit was commenced seeking a reformation of the contract of insurance and damages for fraud and negligent misrepresentation and for breach of contract. The basis for each cause of action is plaintiff's contention that it had been advised by defendant that it was fully insured. This appeal is from the decision of Special Term which granted defendant summary judgment dismissing the complaint. ¶ The policy in effect at the time of the fire provided total coverage for the risk of fire in the amount of $220,000. It also included a 90% coinsurance clause. Plaintiff does not contest defendant's appraisal of $211,054.05 as the actual loss, nor its appraisal of $520,614.50 as the actual value of all property, both real and personal, before the fire. It should be noted also that the policy was a blanket policy which provided coverage for both real and personal property without distinguishing between the two. The coinsurance clause applied to total values

---

[*] By stipulation of plaintiff, the action against defendant Tomak has been discontinued.

rather than separately to each. The policy was properly interpreted. ¶ Plaintiff demanded that, because of mutual mistake, the contract of insurance be reformed to provide full coverage. In doing so, it relies heavily upon a paragraph of a letter from Tomak to Ashley which states: "By packaging these four locations the savings is approximately 15% over existing rates and you now would have proper liability coverage with no overlaps or lack of coverage as presently exists." Its reliance upon that paragraph was unreasonably misplaced. Tomak referred to the liability coverage of the policy and not to fire risk coverage. The first paragraph of the letter stated the amounts of fire risk coverage and described them as new figures "that you requested". The total amount for the Ogdensburg yard was $220,000. ¶ It is clearly evident from prior correspondence that defendant warned plaintiff to consider the coinsurance clause and its possible penalty. It also advised that its appraisals were limited to the buildings and that it was plaintiff's duty to determine the value of its personal property and, in doing so, to take the coinsurance clause into consideration. Probably the most enlightening information is contained in exhibit No. 3 attached to Tomak's affidavit. Ashley admitted that he made the handwritten notes added to the exhibit when he discussed coverage with Tomak. The typed portion of the exhibit was prepared by defendant. As it pertained to the Ogdensburg yard, it listed the full replacement building value of $332,528; building coverage then in effect as $74,000; and contents coverage then in effect as $70,000 The handwritten notes indicated an increase in coverage to $100,000 for buildings and $120,000 for contents. Those figures are precisely the same as those which were incorporated into the policy. Ashley decided on those figures in spite of the fact that defendant had represented that the insurable value of the buildings alone was $268,225. ¶ Before a court will grant reformation, a plaintiff must establish that the writing sought to be reformed was executed under a mutual mistake of fact (i.e., the writing did not conform to the original agreement and the parties were not aware of the discrepancy) or that the writing was executed under a mistaken belief occasioned by the fraud of one of the parties (*Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 86; *Slutzky v Gallati*, 97 AD2d 561; 16 NY Jur 2d, Cancellation & Reformation of Instruments, § 60, pp 367-368). Proof of mutual mistake or unilateral mistake coupled with fraud must be clear and convincing (*Amend v Hurley*, 293 NY 587; *Slutzky v Gallati, supra; Sullivan's of Liberty v Burroughs Corp.*, 57 AD2d 664, mot for lv to app den 43 NY2d 644). ¶ Plaintiff has not met its heavy burden of proof to overcome defendant's motion pertaining to the cause of action for reformation. The record clearly and convincingly establishes the fact that the only mistake, if any, was that of plaintiff's president. Neither does the record disclose any fraudulent or negligent misrepresentation on the part of defendant. On the contrary, it contains repeated statements calling plaintiff's attention to the risks involved and the policy provisions applying thereto. Plaintiff had the policy in its possession for three months prior to the fire but raised no objection. Plaintiff received the policy which it ordered and had ample opportunity to correct it after its issuance and before the loss. Plaintiff cannot contend that it relied upon oral representations contrary to the written language of the policy and the written letters and documents which it received from defendant prior to the policy's issuance (*Metzger v Aetna Ins. Co.*, 227 NY 411; *W. C. Humphreys, Inc. v Zurich Ins. Co.*, 54 Misc 2d 659). ¶ Plaintiff's further contentions have been examined and found to be without merit. ¶ Order affirmed, with costs. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.