Leavitt-Berner Tanning Corporation, Respondent, v American Home Assurance Company, Respondent, and Norstar Bank, Formerly State Bank of Albany, Appellant. (Action No. 1.)

Norstar Bank of Upstate New York, Formerly State Bank of Albany, Appellant, v American Home Assurance Company et al., Respondents. (Action No. 2.)

Third Department, July 2, 1987

### APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C. (David J. Wukitsch* of counsel), for appellant.

*Bouck, Holloway, Kiernan & Casey (Michael J. Longstreet* and *Stephen M. Kiernan* of counsel), for American Home Assurance Company, respondent.

*Hesson, Ford, Sherwood & Whalen (Michael J. Hutter* of counsel), for Moore & Curtis, Inc., and another, respondents.

### OPINION OF THE COURT

MIKOLL, J.

The facts underlying these two actions are as follows. Leavitt-Berner Tanning Corporation (hereinafter Leavitt-Berner) obtained a $400,000 loan from State Bank of Albany (hereinafter Norstar). The loan was secured by Leavitt-Berner's build-

ings, machinery, fixtures and accounts receivable. Leavitt-Berner was required, under the agreement, to maintain adequate fire insurance for the collateral which secured the loan. It secured two policies: the first policy (No. MOP4590143) provided fire insurance for Leavitt-Berner's North Perry Street and Townsend Avenue plant locations in the City of Johnstown, Fulton County, naming Norstar as a mortgagee of the North Perry Street property. The second policy (No. MP9906847) provided coverage for three "Hyster forklifts". Norstar was not named in the second policy. The policies were secured from Donald Curtis of Moore & Curtis, Inc. (hereinafter collectively referred to as Curtis) and underwritten by American Home Assurance Company (hereinafter American). The North Perry Street location was totally destroyed by fires on August 16, 1984 and September 1, 1984. Leavitt-Berner sought payment for its losses, which claim was denied on the ground that the fires were intentionally set.

In action No. 1, Leavitt-Berner sued American and Norstar for payment under the two insurance policies. Norstar counterclaimed against Leavitt-Berner for the amount due under its loan to Leavitt-Berner, and cross-claimed against American seeking payment as loss payee under the two policies. American stated that it would honor Norstar's claim only to the extent that Norstar was a mortgagee of the property. Norstar moved for summary judgment, which was granted on its counterclaim against Leavitt-Berner; Leavitt-Berner's complaint against Norstar was dismissed and American was granted summary judgment dismissing Norstar's cross claim against American.

In action No. 2, Norstar sued American and Curtis seeking reformation of the insurance policies so as to include loss payee designations and lender's loss payable clauses in favor of Norstar. In the alternative, Norstar sought damages for American's and Curtis' alleged negligence in failing to designate Norstar as loss payee under the two insurance policies. Supreme Court granted motions by American and Curtis for summary judgment in action No. 2 dismissing Norstar's complaint.

On this appeal, Norstar contends that Supreme Court erred by granting summary judgment and rejecting Norstar's claim for reformation. Norstar sought to reform both contracts by having itself designated as loss payee. A party seeking reformation must establish, by clear and convincing evidence, that the writing in question was executed under mutual mistake or

unilateral mistake coupled with fraud *(Ogdensburg Bldg. Supply v Lumber Mut. Ins. Co.,* 102 AD2d 960, 961). Reformation will not be granted until there has been sufficient proof that the written instrument fails to embody the parties' true intentions *(Slutzky v Gallati,* 97 AD2d 561, *lv denied* 61 NY2d 602), which proof must overcome the heavy presumption that a deliberately prepared and executed written instrument manifests the intentions of the contracting parties *(see, Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219).

■ We find that American and Curtis each demonstrated their entitlement to judgment by establishing that the two insurance policies did embody the true intentions of the contracting parties. Norstar had the insurance policies in its possession and accepted them, months before the date of the loss and before the date it closed a large loan with Leavitt-Berner. The policies in question were clear and unambiguous, reflecting the coverages to be provided. There is no indication that American, Curtis or Leavitt-Berner intended any agreements other than those appearing on the faces of the two insurance policies. Thus, Supreme Court properly dismissed Norstar's cause of action for reformation.

In an alternative cause of action, Norstar sued to recover against the two contracting parties, American and Leavitt-Berner, under the theory of negligence. Norstar was not a party to the insurance contract. As a general rule, a claim for negligence cannot lie unless it is established that the contracting parties owed a duty to Norstar *(see, Oathout v Johnson,* 88 AD2d 1010). Neither American nor Curtis owed a duty to Norstar; rather, their duty ran to Leavitt-Berner. Norstar contends that it falls within a limited exception to this general rule, as articulated by the Court of Appeals in *Credit Alliance Corp. v Andersen & Co.* (65 NY2d 536, 551, *mot to amend remittitur granted* 66 NY2d 812), wherein it was stated that noncontractual parties may impose liability in negligence against the parties to a contract if (1) the defendant contracting party was aware that his performance under the contract (here, the providing of insurance) was to be used for a particular purpose, (2) the defendant knew that a known third party was intending to rely upon the defendant's performance, and (3) there has been some conduct on the part of the defendant, linking the defendant to the third party, which evinces the defendant's understanding of the third party's reliance.

■ Supreme Court concluded that these requirements were not met here. Its decision was grounded on the fact that

Norstar closed its loan with Leavitt-Berner before it made any requests concerning its designation as loss payee under the policies. Correspondence between Norstar and Curtis occurred after the loan had closed. It cannot be said that Norstar relied upon American's or Curtis' performance, or that the necessary link existed between those parties and Norstar, before Norstar advanced funds to Leavitt-Berner. These facts do not establish a proper basis under the thesis enunciated in *Credit Alliance (supra)* for the imposition of liability against American and Curtis.

Norstar contends that it is entitled to relief as a third-party beneficiary. A party who seeks the status of a third-party beneficiary under a contract has the burden of demonstrating that he has enforceable rights thereunder (22 NY Jur 2d, Contracts, § 271, at 131; *see, 981 Third Ave. Corp. v Beltramini,* 108 AD2d 667, *affd* 67 NY2d 739). The third party is entitled only to those rights which the original parties to the contract intended the third party to have (22 NY Jur 2d, Contracts, § 271, at 130-131). There is no indication that the parties to the insurance policies intended to benefit Norstar.

KANE, J. P., MAIN, YESAWICH, JR., and HARVEY, JJ., concur.

Order affirmed, with one bill of costs to respondents filing briefs.