■ HOME & CITY SAVINGS BANK, Respondent, v JAMEL

REALTY CORPORATION et al., Appellants.—Harvey, J. Appeal from an order of the Supreme Court (Cobb, J.), entered September 18, 1991 in Columbia County, which granted plaintiff's motion for summary judgment dismissing nine of defendants' counterclaims.

In December 1987, defendant Jamel Realty Corporation (hereinafter Jamel) purchased land in the Town of Greenport, Columbia County, with the intention of building an apartment complex there. The project was to be built in phases and was named the "Meadowbrook Project". Thereafter, in July 1988 and November 1988, Jamel executed two mortgages securing loans from plaintiff which financed phase I of the project. Jamel and plaintiff were also negotiating a mortgage for phase II of the construction. Jamel requested a $1.85 million loan, which represented 75% of Jamel's expected cost of $2,485,500 to complete phase II. Plaintiff, however, estimated the cost of completion to be $2.29 million and offered to finance $1.5 million of the construction. A commitment letter for this amount was sent to Jamel and a closing was held in January 1989.

Thereafter, in October 1989, plaintiff's agents realized that Jamel's recently opened checking account was overdrawn by approximately $943,654 and defendants' accounts in Key Bank, N. A. were overdrawn by approximately $300,000. At a meeting between plaintiff's representative and Jamel's sole shareholder it was initially relayed that Jamel needed only $350,000 to $400,000 to complete phase II. At a later meeting, plaintiff was informed that Jamel actually needed $900,000 to complete this phase of the project. Significantly, at this time there was less than $400,000 in undisbursed funds remaining from the $1.5 million loan that plaintiff had made to Jamel. Although plaintiff requested assurances from Jamel that there were sufficient funds to complete the project, none were forthcoming. Accordingly, in light of this loan imbalance, on November 9, 1989 plaintiff advised Jamel that it was in default on the loan.[1] Plaintiff then commenced this action to foreclose all three mortgages. Defendants answered and asserted 12 affirmative defenses and 11 counterclaims. Plaintiff moved for summary judgment dismissing nine of the 11

---

1. Plaintiff claimed default under the provisions of the parties' building loan agreement which allowed default "[i]f any statements, details, budgets or revisions submitted by Borrower to Lender indicate, in the opinion of Lender, that the estimated cost of construction of the Improvements is in excess of the amount of funds available to Borrower to complete and pay for such construction".

counterclaims. Supreme Court granted this motion and defendants now appeal.

We affirm. Although defendants advance several arguments in support of their claim that Supreme Court improperly dismissed their counterclaims,[2] we find them unavailing. For instance, defendants' first counterclaim seeks reformation of the mortgages to reflect defendants' contention that the third mortgage for phase II construction allegedly only burdened the phase II property. We find, however, that this claim was properly dismissed because the description of the mortgaged property given with all three mortgages specifically states that the entire parcel was given as security, not just certain pieces of it. A mortgage is presumed to manifest the intentions of the parties (see, Leavitt-Berner Tanning Corp. v American Home Assur. Co., 129 AD2d 199, 202, lv denied 70 NY2d 609). The arguments contained in the affidavit of defendants' counsel fail to raise a question of fact on this issue or establish that the mortgages were obtained as a result of mutual mistake or unilateral mistake coupled with fraud (see, supra., at 201-202).

Next, we agree with Supreme Court that defendants' second, third, fifth and seventh counterclaims, which all turned upon the reasonableness of plaintiff's declaration of a default due to loan imbalance, were properly dismissed. Although defendants now vigorously dispute plaintiff's motives in claiming default, there is little question from the record that, at the time of the default, Jamel needed $900,000 to complete the applicable stage of the project while possessing less than $400,000 in undisbursed loan proceeds. At the same time defendants had overdrafts in banking institutions of approximately $1.2 million. Notably, despite their contention that they were always ready, willing and able to complete the project and pay their loan, defendants concede that Jamel never supplied plaintiff prior to the default with the requested proof of ability to continue on the project as contemplated by the building loan agreement. Under these circumstances, there is no support for defendants' claim that plaintiff acted unreasonably or in bad faith in declaring default. Accordingly, the fifth and seventh counterclaims were properly dismissed.

We also conclude that defendants' argument in their second counterclaim alleging that plaintiff employed economic duress

2. With respect to defendants' 11th counterclaim, we note that defendants have waived review of this dismissal by not addressing the issue in their appellate brief (see, Transamerica Commercial Fin. Corp. v Matthews of Scotia, 178 AD2d 691, 692, n 1).

or coercion to trigger the default has no support in the record. The fact that plaintiff lent Jamel $1.5 million instead of the requested $1.85 million cannot be considered economic duress because plaintiff cannot be faulted for refusing to do something it was not legally required to do (see, *Marine Midland Bank v Cafferty*, 174 AD2d 932, 936). Significantly, there was plenty of time between the December 22, 1988 commitment letter and January 18, 1989 closing date for Jamel to seek funds from another bank if the agreed-upon amount was insufficient. Similarly, defendants' argument in their third counterclaim that plaintiff caused the loan imbalance by allegedly not timely disbursing $97,200 of the undisbursed loan proceeds lacks merit. As. pointed out by Supreme Court, the argument lacks logical consistency since the disputed amount remained available as undisbursed loan proceeds and was therefore irrelevant with respect to the loan imbalance. Moreover, assuming defendants are correct about the delay in disbursement by plaintiff, defendants' claim that this comparatively minor amount caused them to default by holding up the payment of subcontractors is contradicted by the affidavit from Jamel's sole shareholder stating that, on the date the default was declared, Jamel was substantially current on all payment to suppliers and subcontractors. Consequently, this counterclaim was also properly dismissed.

Finally, we agree that defendants' eighth, ninth and 10th counterclaims were also properly dismissed. Defendants failed to put forth sufficient proof on its tortious interference with business counterclaims to defeat plaintiff's motion for summary judgment. Their negligence claim was also properly dismissed inasmuch as no duty other than a contractual duty was alleged (see, *Quail Ridge Assocs. v Chemical Bank*, 162 AD2d 917, 919, *lv dismissed* 76 NY2d 936).

Yesawich Jr., J. P., Levine, Crew III and Mahoney, JJ., concur. Ordered that the order is affirmed, with costs.