OPINION OF THE COURT
C. Stephen Hackeling, J.
*424 Harold Krasner, the above captioned plaintiff, by small claims complaint dated May 23, 2007, seeks the return of $115, imposed upon him as an annual “service fee” and paid by him in February of 2006. The defendant, Greens Golf Club, LLC, asserts that the fee is duly authorized and implemented pursuant to a clause existing in page 17 of a condominium offering plan sponsored by SBJ Associates, LLC (hereafter the sponsor), for the residential development known as “Greens at Half Hollow Conservation I.”
The Undisputed Facts
The plaintiff purchased one of 384 condominium houses from the sponsor during 2004. Page 17 of the condominium project’s “offering plan” (exhibit 1) provides in relevant part:
“The Greens at Half Hollow Golf Club (the ‘Golf Club’), which will be located adjacent to the Development, will be owned by an affiliated entity of Sponsor (the ‘Owner’ or ‘Club Owner’).
“The Golf Club will consist of an approximate 4,000 yards, par 60 eighteen (18) hole executive golf course; four (4) tennis courts; swimming pool an approximate 30,000 square foot club house facility. The club house shall contain meeting rooms, locker rooms, golf cart storage, golf pro shop, indoor swimming pool, fitness center, card room, library and offices. The Golf Club is a privately owned facility and will not form a part of the Common Areas owned by the Condominium and/or the Association.
“All home owners, will automatically be ‘Social Members’ of the Golf Club at a current monthly cost of $100. This fee is payable monthly directly to the Club Owner by each Home Owner in the Development. The Owner of the Golf Club will have a lien on the Home of a Social Member for non payment of Social Membership fees. See Article X of Schedule K-2 for details. As Social Members of the Golf Club all Home Owners will have complete rights and privileges to fully utilize all of the club. house facilities including tennis and swimming. The current Social Membership fee shall be guaranteed by the Sponsor to remain at this level for two (2) years after closing of the first Home for all Home Owners or for each Home Owner for one (1) year after the closing of his or her Home whichever alternative may apply on a case by case basis. There *425 after, this fee may be modified by the Club Owner on an annual basis after the initial guarantee period has expired.”
The Club, an “affiliated entity of the Sponsor,” via letter dated December 2005 (exhibit 2) advised the plaintiff that it was increasing his social membership fee from the $100 per month indicated in the offering plan to $125 per month. Additionally, the letter advised that it was eliminating the 18% service charge (gratuity) applied to Club nonfood activities and instead imposing a mandatory annual staff services/ appreciation fee of $115. The plaintiff testified he did not previously have to pay the 18% gratuity charge because he did not partake of the chargeable club activities. The plaintiff paid the $115 annual gratuity fee on February 20, 2006 “under protest.” (Exhibit 4.)
Issue Presented
While not expressly stipulated, it appears that the parties seek judicial intervention solely to consider whether the Club is legally authorized to impose an annual mandatoiy “service fee” in addition to its “Social Membership fee.”
Legal Discussion
The New York Real Property Condominium Act does not govern the resolution of the subject dispute as the Club is not a condominium “common element” as defined under Real Property Law § 339-e (3). The Club utilizes no condominium property and is 100% privately owned by an affiliate of the sponsor. Additionally, financial responsibility for common elements may be assessed only upon a proportional basis reflecting either the fair value of the unit compared to the value of all the condo units or proportioned as to floor area. (See Real Property Law § 339-i.) The social fees imposed for Club membership are assessed per capita without regard to proportional value or floor space.
The record presented establishes no direct contractual privity between the plaintiff and the defendant Club, nor have any actual executed deeds been presented to establish liability running with title to the subject real property. However, neither party appears to dispute the Club’s legal authority and ability *426 to charge a social membership fee which may be converted, to a lien on real property if not paid.[1]
A party who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental (see State of Cal. Pub. Employees’ Retirement Sys. v Shearman & Sterling, 95 NY2d 427, 434-435 [2000]; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d 117, 123 [1st Dept 1999]). In determining whether a third party was an intended beneficiary to a contract, the actual intent of the parties is critical and the best evidence of the contracting parties’ intent is the language of the agreement itself (Zelber v Lewoc, 6 AD3d 1043, 1045 [3d Dept 2004]). The sample purchase agreement is contained on page 92 of the sponsor’s offering plan (exhibit 1). Clause 7 on page 94 thereof indicates that the purchaser agrees to be bound by the declarations' contained in the offering plan and that any conflict between the purchase agreement and the offering plan declarations are to be construed in favor of the offering plan. Said contract also indicates that it is an integrated document and no other agreements or representations exist. The language of page 17 of the offering plan clearly indicates that the Club is an intended third-party beneficiary of the agreement between the condo sponsor/developer and the plaintiff owner. “The third party [beneficiary] is entitled only to those rights which the original parties to the contract intended the third party to have.” (Leavitt-Berner Tanning Corp. v American Home Assur. Co., 129 AD2d 199, 203 [3d Dept 1987], lv denied 70 NY2d 609 [1987].) The court finds that the defendant herein is an intended third-party beneficiary to the contract between the developer (SBJ Associates) and the plaintiff condominium owner.
However, as the parties are dealing in the realm of an actual express contract rather than that of “quasi contract,”[2] the owner’s payment responsibilities are limited to the agreements contained in page 17. In the event of doubt or ambiguity as to the meaning of the contract terms, the language of the contract *427 is construed most strongly against its drafter (Matter of Zaremba v Interface Flooring Sys., 195 AD2d 471 [2d Dept 1993]), or against the party who supplied the form language for said agreement or the party whose attorney drew it. (Wing v Wing, 112 AD2d 932 [2d Dept 1985].) Said agreement expressly creates and authorizes a “Social Membership fee” and provides for its increase. No mention is made expressly or inferentially to an annual “service fee’’/gratuity. It is undisputed that the Club unilaterally increased its social membership fee from $100 to $125 as authorized on page 17. It is also undisputed that in the same directive, the Club unilaterally sought to replace a standing 18% gratuity fee, chargeable to members for actual services utilized by them individually and instead imposed a flat $115 annual “service fee” upon all owners without regard to their usage of service. The service fee can in no manner be construed as a social membership fee, as each are separately and independently itemized in exhibits 3 and 4. While the Club could enforce the developer’s contract to collect “social membership fees,” there exists no contractual basis to create and impose a mandatory “service fee’Ygratuity. Clearly it was not the intent of the sponsor and the plaintiff herein to give this right to the defendant Club, via the contract. Accordingly, the Club breached the third-party agreement in imposing and collecting the gratuity fee and is liable for its return under a common-law restitution theory. (See Wiener v Lazard Freres & Co., 241 AD2d 114 [1st Dept 1993].)
Judgment for the plaintiff against the defendant for $115 plus interest from February 20, 2006 and costs.

. Absent resort to New York’s Condominium Act (Real Property Law art 9-B), the Club’s ability to assert a statutory nonjudicially created lien against subsequent assignees is suspect.

. Absent an express contract many homeowners’ “common area” expenses are assessable under this common-law theory. (See Seaview Assn. of Fire Is. v Williams, 69 NY2d 987 [1987].)