■ MARY P. KOEHLER et al., Respondents, v PETER SCHWARTZ, Appellant.—In a medical malpractice action, defendant appeals from a judgment of the Supreme Court, Nassau County, dated October 28, 1977, in favor of plaintiffs, upon a jury verdict. Judgment reversed, on the law, with costs, and complaint dismissed. In May, 1972, defendant performed an abortion on plaintiff Mary P. Koehler (plaintiff) which failed, however, to terminate her pregnancy. She subsequently gave birth to an apparently healthy, normal baby girl. Prior to undergoing the abortion, plaintiff had had three operations for the removal of malignant growths. The abortion was recommended and consented to by plaintiff on the ground that hormonal changes during pregnancy could speed up and spread any melanoma remaining in her body. On the theory that defendant's performance of the abortion procedure (suction curettage) and delay in notifying her that the procedure had failed to accomplish its purpose had not been in accord with proper practice, and that such malpractice had caused plaintiff injury in the form of mental and emotional distress (traumatic psychoneurosis, with obsessive anxieties, cancerophobia and depression), the jury found in favor of the plaintiffs. The judgment must be reversed and the complaint dismissed. Plaintiffs failed to establish by expert evidence that defendant had not performed the abortion in accordance with proper and accepted medical standards. They presented no expert medical testimony in their own behalf to counter the testimony of defendant's experts, as well as of defendant himself (called on plaintiffs' case), that the procedure was performed in accordance with proper and accepted practice. Although one might infer from the hospital record that defendant had failed to use a sharp curette in addition to a suction curette, despite his testimony that he always used both, one cannot go further and infer that the abortion would have been successfully completed had the sharp curette been used. Not only is this the type of case in which a jury of laymen is ill-equipped to determine the issue of negligence simply as an inference from the circumstances, thus rendering inapplicable the doctrine of *res ipsa loquitur* (see *Pipers v Rosenow,* 39 AD2d 240), but all of the

expert testimony adduced indicates that the use of the sharp curette is purely a matter of choice, being merely an alternative procedure. There can be a failure to terminate a pregnancy despite its use since this is a blind procedure in which care must be taken not to perforate the wall of the uterus or scar its lining. The procedure is allegedly even riskier where, as here, the uterus was retroverted. Defendant was also found guilty of malpractice in failing to inform plaintiff prior to her regularly scheduled six-week visit, that the procedure had failed. Whatever the merits of this claim, it is clear that this delay cannot independently support an award of damages. It was not, in and of itself, a proximate cause of any of plaintiff's emotional and mental distress. Titone, J. P., Gulotta and Martuscello, JJ., concur.

Suozzi, J., dissents and votes to affirm the judgment, with the following memoranudm: Plaintiffs' malpractice case against the defendant doctor was submitted to the jury on two theories of liability: (1) that defendant's performance of an abortion procedure (suction currettage), which failed to terminate plaintiff Mary P. Koehler's pregnancy, was not done in accordance with proper medical practice; and (2) that defendant's delay in notifying the plaintiffs of the procedure's failure was not in accord with proper medical practice. Plaintiffs alleged that defendant's malpractice caused the female plaintiff mental and emotional distress (traumatic psychoneurosis, with obsessive anxieties, cancerophobia and depression). The jury found for plaintiffs on both theories of liability alleged by them. In reversing the judgment and dismissing the complaint the majority holds that (1) a prima facie case of negligence was not made out by plaintiffs on the first theory of liability due to their failure to produce any competent expert testimony that the abortion procedure was not done in accordance with proper and accepted medical practice, and (2) whatever the merits of plaintiffs' claim that defendant was guilty of malpractice in failing to advise them of the failure of the procedure for a period of six weeks, any malpractice in this regard was not a proximate cause of any of the female plaintiff's emotional and mental distress. I disagree. in my view, plaintiffs produced sufficient medical evidence to justify the submission of both theories to the jury and the latter's verdict in favor of plaintiffs should not be disturbed. With regard to the first theory of liability, the defendant doctor admitted that he always used a suction tube and a sharp curette since he considered both useful in evacuating all of the contents of the uterus. The defendant himself was asked the following question and gave the following response: "Q. Then to make doubly sure, particularly in a situation where there is a malignancy with many overtones and perhaps reasons for doing the abortion in the first place, would you say that proper practice would well justify making sure by doing another step, namely, using a curette? A. Yes. I always do it." The defendant, therefore, admitted that he adopted a particular standard for performing this procedure, i.e., suction and a sharp curette which he considered proper and useful and which he allegedly always adhered to. However, the use of the sharp currette was not specifically detailed in the hospital record of the operation and on that basis, defendant's own medical expert stated that a reading of the hospital record would lead to a conclusion that no sharp curette was in fact used during this abortion. Based on this evidence, there was a sufficient basis for the jury to disbelieve the defendant and find that he failed to use the sharp curette which was the standard he had set for himself and which he considered to be proper in performing an abortion. Such a finding by the jury, which is permissible on this record, would support its finding that the doctor was

guilty of malpractice. Therefore, I do not believe there is any basis for setting aside the verdict. In *Toth v Community Hosp. at Glen Cove* (22 NY2d 255, 263) the Court of Appeals stated: "evidence that the defendant followed customary practice is not the sole test of professional malpractice. If a physician fails to employ his expertise or best judgment, and that omission causes injury, he should not automatically be freed from liability because in fact he adhered to acceptable practice. There is no policy reason why a physician, who knows or believes there are unnecessary dangers in the community practice, should not be required to take whatever precautionary measures he deems appropriate." Accordingly, plaintiffs' first theory of liability was properly submitted to the jury. With respect to the second theory of liability advanced by plaintiffs, two additional facts must be stressed which have not been set out in the majority's memorandum: (1) the female plaintiff had the abortion procedure during the first trimester of her pregnancy; and (2) the female plaintiff was given unshielded X rays on the day of the abortion on the assumption that the abortion would succeed. The medical evidence adduced at the trial established that the abortion procedure used in this case should result in the fetus being broken up into pieces, which include villi (small projections that are part of the placenta) and these pieces pass through a suction tube into a container. A pathology report is then prepared to determine if the products of the pregnancy have been removed successfully by the abortion process. According to the medical testimony the absence of villi in the evacuated contents of the uterus indicates that the abortion has failed. The pathology report which was available for defendant's inspection within a few days after the abortion procedure of May 2, 1972 stated, "No villi seen". Defendant acknowledged that he was aware of the report a week after the abortion. Defendant admitted that he misinterpreted the pathology report but that, in any event, it was perfectly proper practice to wait six weeks before advising the patient that the abortion had failed. However, in contrast to defendant's testimony, plaintiffs adduced testimony from one of the defendant's own medical witnesses to the effect that (1) proper practice required a prompt reading of the pathology report to verify the presence or absence of villi which would indicate the success or failure of the abortion, and (2) it was improper practice for a doctor to wait six weeks and allow a woman to advance to her second trimester before advising her that an abortion had failed. Specifically, this witness testified that: "The advantages of performing an abortion in the first trimester of the pregnancy, since it is a relatively simple procedure, are certainly advantageous to the patient, and therefore the delays as the pregnancy grows and gets larger make it more disadvantageous to the patient to have the pregnancy terminated [by a saline technique]. Q. As a matter of fact, the longer you wait, the more complicated it may be to accomplish the abortion? A. That is what I said." In view of this testimony, it was for the jury to determine whether defendant was negligent in not advising the female plaintiff of the failure of the abortion until six weeks later when she was already in her second trimester, and whether any negligence in this regard was the proximate cause of the patient's reawakened fear of the spread of cancer and her new fear of the effect of the unshielded X rays on the unaborted fetus, which fears were established by expert medical testimony. Although defendant argues that the patient could have minimized any mental anxiety by then submitting to an abortion by saline solution, that argument only affects the amount of damages to be ultimately recovered by plaintiffs and is irrelevant to the issue of negligence. Moreover, the patient's refusal to undergo the abortion by saline

solution cannot be considered unreasonable as a matter of law in view of the medical evidence adduced. In this regard, the trial court properly charged the jury as follows: "in determining what damages she may recover * .* * you must decide if the plaintiff * * * acted as a reasonably prudent person in refusing to have the saline solution abortion and electing to carry and bear her daughter * * * In deciding that question, you will take into consideration so much of the evidence introduced by both sides as you credit concerning the nature of the saline solution abortion procedure, the extent to which such a medical procedure involved danger to the plaintiff, and the results to be expected from it. If you find that in making a determination not to have the saline solution abortion Mrs. Koehler acted as a reasonably prudent person would under the circumstances, then she is entitled to recover for her fears concerning the unborn child as you find them to be without regard to the possibility of a second abortion procedure. If, however, you find that the suggested saline solution abortion is one that a reasonably prudent person would submit to under the circumstances and that the abortion would have eliminated Mrs. Koehler's concern over the well-being of her unborn child, you will take that fact into consideration in arriving at the amount of damages, if any, that you award the plaintiff on this aspect of the lawsuit." Accordingly, I dissent and vote to affirm the judgment.