■ JOHN HENRY CERNY et al., Appellants, v VICTORIA WILLIAMS et al., Defendants, and ANDREA DOBRENIS et al., Respondents. [822 NYS2d 548]—

In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Queens County (Hart, J.), entered October 19,

2004, which, upon an order of the same court dated July 21, 2004, granting that branch of the motion of the defendants Andrea Dobrenis and HIP Hospital, Inc., sued herein as LaGuardia Hospital, which was for summary judgment dismissing the complaint insofar as asserted against them, dismissed the complaint insofar as asserted against those defendants.

Ordered that the judgment is reversed, on the law, with costs, those branches of the motion which were to dismiss so much of the first and third causes of action as alleged that the defendants Andrea Dobrenis and HIP Hospital, Inc., sued herein as LaGuardia Hospital committed medical malpractice in the administration of the drug Pitocin and in the initial determination to forgo a cesarean section are denied, those portions of these causes of action are reinstated, and the order dated July 21, 2004 is modified accordingly.

The plaintiff Carol Cerny (hereinafter the mother), who was pregnant, was admitted to LaGuardia Hospital by her attending physician, the defendant Victoria Williams, because she was experiencing decreased fetal movement. The infant plaintiff, John Henry Cerny, was born early the next morning, and has since been found to suffer from birth defects that the mother attributes to the decision to administer Pitocin, a labor-inducing medication, rather than to deliver the child by cesarean section without first attempting to induce labor. The mother and her child (hereinafter together the plaintiffs) also claim that the Pitocin was administered without the mother's informed consent, and that, even after the decision was ultimately made to deliver the child by cesarean section, the defendants were negligent in failing to prepare the mother more quickly for surgery.

The plaintiffs commenced this action against, among others, Dr. Williams, HIP Hospital, Inc., sued herein as LaGuardia Hospital (hereinafter the hospital), and Dr. Andrea Dobrenis, a resident physician at the hospital. The hospital and Dr. Dobrenis (hereinafter together the hospital defendants) moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against them. The Supreme Court granted that branch of the hospital defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them, and the plaintiffs appeal.

The Supreme Court erred in granting that branch of the hospital defendants' motion which was for summary judgment dismissing the plaintiffs' causes of action insofar as asserted against them with respect to the decision to induce labor by administering Pitocin, rather than to deliver the child im-

mediately by cesarean section. The motion in this regard is founded upon the theory that the decision was made by Dr. Williams, the attending physician, who was not an employee of the hospital. Although a hospital is not liable for the negligence of a private attending physician (*see Hill v St. Clare's Hosp.,* 67 NY2d 72, 79 [1986]; *O'Regan v Lundie,* 299 AD2d 531 [2002]; *Woodard v LaGuardia Hosp.,* 282 AD2d 529 [2001]), and cannot be held concurrently liable with such a physician unless its employees commit independent acts of negligence or the attending physician's orders are contraindicated by normal practice (*see Petty v Pilgrim,* 22 AD3d 478, 479 [2005]; *Soto v Andaz,* 8 AD3d 470, 471 [2004]; *Walter v Betancourt,* 283 AD2d 223, 224 [2001]), the record fails to establish, prima facie, a critical element of this defense, i.e., that the medical decisions alleged to have been a departure from accepted medical practice were in fact made by Dr. Williams. Since the hospital defendants thus failed to establish their entitlement to judgment as a matter of law, their motion should have been denied in this regard (*see Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853 [1985]).

The only evidence submitted as to what transpired, with one exception, was the hospital record. Dr. Williams and Dr. Dobrenis both testified in examinations before trial that they had no independent recollection of the relevant events, and were entirely dependent upon the hospital record for the facts. Moreover, although Dr. Williams testified that it was possible that she had seen the patient at certain times that were not reflected in the hospital record, she had no independent recollection of doing so.

The hospital record reflects that the mother was admitted to the hospital at approximately 4:50 P.M. on the date in question, at which time Dr. Williams decided that labor should be induced. The record nowhere reflects, however, that it was Dr. Williams's decision to administer Pitocin. Rather, the order to do so was written by Dr. Dobrenis.

Critically, with the exception of notes indicating that Dr. Williams was advised of fetal heart monitoring results at 1:45 A.M., there is no evidence in the record of Dr. Williams's involvement in the mother's actual treatment during the period beginning at 4:50 P.M. and ending at 3:45 A.M., during which time the order was given to administer Pitocin, and the decisions were made to discontinue Pitocin, after a significant fetal heart rate deceleration was detected at 2:20 A.M., and to resume it, at 3:15 A.M., when the fetal heart rate had recovered. The hospital record reflects that only Dr. Dobrenis was informed of the deceleration

at 2:20 A.M., and that the Pitocin was discontinued at that time, but there is no written order discontinuing the Pitocin, and there is no indication as to who directed that it be discontinued and then restarted. According to the hospital record, Dr. Williams's direct involvement in the mother's treatment did not resume until 3:45 A.M., at which time she directed that the dosage of Pitocin be increased.

The only evidence of Dr. Williams's involvement in the decision to administer Pitocin in the first instance is the mother's deposition testimony that, at some time between 9:00 P.M. and 10:00 P.M., Dr. Williams advised her that they would start administering Pitocin to induce labor after they had obtained an oxygen reading from the child, and Dr. Williams's deposition testimony, in which she merely presumed that she made the decision to order the Pitocin. The record reflects, however, that the actual order to administer Pitocin was issued by Dr. Dobrenis, and then not until 12:00 A.M.

Recognizing the fact that the hospital record does not reflect Dr. Williams's presence when these allegedly crucial treatment decisions were made, the hospital defendants sought to meet their burden by relying upon an inference that she was present, and an inference, alleged to follow therefrom, that Dr. Williams made all of the relevant decisions regarding the administration of Pitocin. That attempt was insufficient. The absence of a notation of Dr. Williams's presence is not proof that she was not present (*see Topel v Long Is. Jewish Med. Ctr.*, 55 NY2d 682, 684 [1981]; *Krapivka v Maimonides Med. Ctr.*, 119 AD2d 801, 802 [1986]; *but see Koehler v Schwartz*, 67 AD2d 963 [1979], *affd* 48 NY2d 807 [1979]), but it does not establish her presence either. Moreover, on a motion for summary judgment, we are required to draw all inferences against the moving party (*see Erikson v J.I.B. Realty Corp.*, 12 AD3d 344, 345 [2004]; *Brandes v Incorporated Vil. of Lindenhurst*, 8 AD3d 315, 315 [2004]; *Hoovis v Winthrop Univ. Hosp.*, 268 AD2d 409 [2000]). Applying that principle here, we cannot infer Dr. Williams's involvement in the treatment decisions made throughout the evening from the record entries merely noting her presence, and from her equivocal testimony given on the basis of that record. Relying on the record, as we must, since both Dr. Williams and Dr. Dobrenis have disavowed any independent recollection of the facts, there is simply no evidence of Dr. Williams's involvement in the critical decisions made with respect to the plaintiffs' treatment upon which the plaintiffs' claims are founded.

It is insufficient for the hospital defendants to rely in support of their motion on the fact that the plaintiffs submitted no evi-

dence that hospital employees deviated from Dr. Williams's orders or on the argument that the presence of Dr. Williams would not have resulted in a different course of treatment (*see Tuzeo v Hegde,* 172 AD2d 747 [1991]; *Minardo v Estate of Mussio,* 116 AD2d 701 [1986]). This argument assumes that Dr. Williams ordered, or would have ordered, that the administration of Pitocin be continued until labor was induced, regardless of the fetal condition. Since there is no evidence in the record of the conditions under which Dr. Williams intended that Pitocin should be administered, there is no basis for this assumption. Moreover, to conclude from the mother's deposition testimony that Dr. Williams had made the decision to administer Pitocin regardless of the attendant circumstances, and that Dr. Dobrenis was merely acting upon this determination in ordering that the drug be administered two to three hours later, after the oxygen readings had been received, is a logical leap that cannot be the basis for dismissing the plaintiffs' case at the summary judgment stage.

Unlike our dissenting colleague, we do not read the record as evidencing Dr. Williams's assertion that she had directed that the administration of Pitocin continue until there was adequate labor. Rather, in making that statement in her examination before trial, she was merely reading the note in the record as to the order given by Dr. Dobrenis. Her further statements, from which our colleague draws the inference that Dr. Williams's orders had been carried out to her satisfaction, are also less than definitive. Her actual testimony in this regard was limited to responding "not offhand," to an inquiry as to whether "having reviewed the materials you did in preparation for this deposition" she had "any indication" or was "aware of any orders or directives you made to the staff at LaGuardia Hospital that were not carried out to [her] satisfaction" and responding affirmatively when asked if "as you sit here today, you know of no orders or directives you made that weren't carried out to your satisfaction." Such testimony did not constitute an affirmative assertion by Dr. Williams that Dr. Dobrenis was at all times acting pursuant to her direction and therefore, was insufficient to satisfy the hospital defendants' burden of establishing their prima facie entitlement to judgment as a matter of law.

The Supreme Court did not err, however, in granting that branch of the hospital defendants' motion which was for summary judgment dismissing the plaintiffs' cause of action based on the alleged lack of informed consent to the administration of pitocin. The mother's deposition testimony established that Dr. Williams discussed the administration of Pitocin with her. While,

as discussed above, the record is insufficient to establish as a matter of law that Dr. Dobrenis did not exercise any independent medical judgment for which the hospital defendants may be liable here, all of the decisions that she is claimed to have made would have been within the scope of the informed consent given to the administration of Pitocin. In these circumstances, it was not the obligation of Dr. Dobrenis to obtain that consent (*see Beard v Brunswick Hosp. Ctr.*, 220 AD2d 550, 551 [1995]; *Spinosa v Weinstein*, 168 AD2d 32, 38-41 [1991]).

The Supreme Court correctly granted that branch of the hospital defendants' motion which was for summary judgment dismissing so much of the plaintiffs' medical malpractice claims as allege a delay in surgical preparation. The hospital record establishes that at some time between 6:35 A.M. and 6:45 A.M., Dr. Williams decided that the child should be delivered by cesarean section, and directed that the mother be prepared for surgery. The hospital defendants established their entitlement to judgment as a matter of law with respect to the claim of delay by demonstrating, through the affidavit of their expert, that there was no delay in commencing the surgery that was inconsistent with accepted standards of obstetrical care. Contrary to the hospital defendants' argument, however, the affirmation of the plaintiffs' expert in response was not deficient by reason of the redaction of the expert's name, even though an unredacted and signed original was not concurrently submitted to the court. The unredacted original was offered to the court for its in camera inspection, as is required (*see Marano v Mercy Hosp.*, 241 AD2d 48, 50 [1998]; *Carrasquillo v Rosencrans*, 208 AD2d 488 [1994]; *McCarty v Community Hosp. of Glen Cove*, 203 AD2d 432 [1994]). Nevertheless, the conclusory assertion of the plaintiffs' expert, without support, that the hospital's delay of 43 minutes from the discontinuance of Pitocin until the delivery by cesarean section was a departure from accepted medical practice was insufficient to raise a triable issue of fact (*see Lynn G. v Hugo*, 96 NY2d 306, 310 [2001]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 [1986]). Crane, J.P., Santucci and Spolzino, JJ., concur.

Dillon, J. (dissenting and voting to affirm the judgment): I respectfully dissent.

The parties seeking summary judgment, Dr. Andrea Dobrenis and HIP Hospital, Inc., sued herein as LaGuardia Hospital, were required to establish their prima facie entitlement to judgment as a matter of law by tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986];

*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The majority has concluded that the initial burden of proof was not established, given the absence of notations in the hospital chart that Dr. Williams was present for and directed medical decisions when Pitocin was chosen as a course of treatment between 9:00 P.M. and 10:00 P.M., actually ordered at 12:00 A.M., discontinued at 2:20 A.M., and resumed at 3:15 A.M., and further, that Drs. Dobrenis and Williams lacked independent recollections of these events, instead relying upon the hospital chart.

However, the record includes deposition testimony from the plaintiff Carol Cerny, a registered nurse with independent recollection of relevant events, that Dr. Williams ordered the Pitocin stimulation in her presence between 9:00 P.M. and 10:00 P.M. The written order of Dr. Dobrenis at 12:00 A.M. merely evidences that Dr. Williams's directions, as described by the plaintiff, were being carried out by the hospital's resident. Consequently, as to events between approximately 9:00 P.M. and midnight, the absence of notations in the hospital chart identifying Dr. Williams's involvement in medical decision making is of no significance. The prima facie burden was established, through evidence independent of the defendants themselves, that Dr. Dobrenis was following the orders of the patient's attending physician. The following of orders has the legal effect of insulating Dr. Dobrenis and the hospital from tort liability (*see Toth v Community Hosp. at Glen Cove*, 22 NY2d 255, 256 [1968]; *Walter v Betancourt*, 283 AD2d 223, 224 [2001]; *Georgetti v United Hosp. Med. Ctr.*, 204 AD2d 271, 272 [1994]; *accord Petty v Pilgrim*, 22 AD3d 478, 481 [2005]).

Nurses' notes in the hospital's chart indicate that Dr. Williams read or was advised of fetal heart monitoring results at 12:50 A.M., 1:35 A.M., 3:45 A.M., 6:10 A.M., and 6:35 A.M. While no specific chart entry references Dr. Williams's presence at 2:20 A.M. and 3:15 A.M. when Pitocin was discontinued and then resumed, Dr. Williams testified that the administration of Pitocin was to be continued until there was adequate labor, which was never achieved. Dr. Williams also testified at her deposition that all of her orders had been carried out to her satisfaction. At 3:45 A.M. Dr. Williams increased the dosage of Pitocin. Thus, despite the temporary discontinuance of Pitocin between 2:22 A.M. and 3:15 A.M. due to fetal heart rate necessity, and despite the silence of the hospital's chart as to Dr. Williams's presence during that time, the record demonstrates that Dr. Williams's initial order to administer Pitocin until there was adequate labor was followed by Dr. Dobrenis's resumption of Pitocin at 3:15 A.M. The Pitocin dosage was thereafter increased

by Dr. Williams at 3:45 A.M. Where hospital personnel do not stray from the directives of the attending physician, as confirmed here by Dr. Williams's testimony that her orders had all been followed to her satisfaction, the entitlement to summary judgment is established in favor of hospital personnel (*see Tuzeo v Hegde,* 172 AD2d 747, 748 [1991]). In other words, since all of Dr. Williams's orders were carried out to her satisfaction, there is no argument that Dr. Dobrenis committed an independent act of negligence by which liability can be imposed upon her or the hospital.

The burden of proof therefore shifted to the plaintiffs to defeat summary judgment by raising an issue of fact in their submissions requiring trial (*see Alvarez v Prospect Hosp., supra* at 324; *Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]). The plaintiffs sought to raise an issue of fact by relying upon, inter alia, the redacted affirmation of a board-certified obstetrician that Dr. Dobrenis and the hospital had departed from the accepted standards of obstetrical care by their failure to discontinue pitocin and initiate a cesarean section at 12:50 A.M., 1:00 A.M., 1:45 A.M. and 2:20 A.M., and in resuming Pitocin administration at 3:15 A.M. However, the affirmation of the obstetrician fails to raise a triable issue of fact. On this record, it is established that Dr. Williams, as the attending physician, had decided against performing a cesarean section at all times prior to 6:45 A.M., increased the dosage of Pitocin at 3:45 A.M. to further induce labor, and made no affirmative decision to perform a cesarean section until 6:45 A.M. While the plaintiff's obstetrician's affirmed opinion may have raised a factual question about the need for a cesarean section between 12:50 A.M. and 3:15 A.M., it is irrelevant to the issue of whether Dr. Dobrenis and the hospital were authorized to independently undertake cesarean procedures. Indeed, Dr. Dobrenis and the hospital were without authority to perform a cesarean section, as Dr. Williams was the attending physician with ultimate authority over the patient's care (*see Al Malki v Krieger,* 213 AD2d 331 [1995]). It is evident from the record that pursuant to her authority over the patient, Dr. Williams established an unwavering course of treatment to induce labor with Pitocin between the evening of March 19, 1999 and 6:45 A.M. the following morning, when the decision to perform a cesarean section was finally made.

While liability is not typically imposed upon hospital personnel for following orders of a private physician attending the patient, an exception exists when the hospital's employees know that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the cor-

rectness of the order (*see Toth v Community Hosp. at Glen Cove, supra* at 265 n 3; *Nagengast v Samaritan Hosp.*, 211 AD2d 878 [1995]; *Pollicina v Misericordia Hosp. Med. Ctr.*, 158 AD2d 194, 199 [1990]). The plaintiff's obstetrician's affirmation fails to address factual circumstances or render an opinion that would trigger the foregoing exception.

The plaintiff's failure to raise a question of fact is also supported by *Minardo v Estate of Mussio* (116 AD2d 701 [1986]). It was argued in *Minardo* that the failure of hospital personnel to contact a pediatrician when an infant patient experienced a negative change in condition was a departure from accepted medical practice. Assuming such a departure existed, the court nevertheless affirmed summary judgment in favor of the defendant hospital, as there was no evidence that had the pediatrician been contacted, any curative steps would have been undertaken (*see Minardo v Estate of Mussio, supra* at 702). Here, grounds favoring Dr. Dobrenis and the hospital are even more compelling. The hospital chart demonstrates that between 3:45 A.M. and 6:45 A.M., Dr. Williams did not undertake the curative step of a cesarean section and instead continued her efforts to induce labor by the administration of Pitocin at an increased dosage. Accordingly, it is not sufficient for the plaintiffs' obstetrician to state that Dr. Dobrenis should have performed a cesarean section at 12:50 A.M., 1:00 A.M., 1:45 A.M. or 2:20 A.M., since the treatment plan of Dr. Williams, who was in charge of the patient (*see Al Malki v Krieger, supra*), did not call for a cesarean section until 6:45 A.M.

The Supreme Court correctly granted summary judgment to Dr. Dobrenis and the hospital as to allegations that the cesarean procedure had been delayed for 43 minutes between the final discontinuance of Pitocin until delivery (*see Alvarez v Prospect Hosp., supra* at 325). Dismissal was also warranted in their favor as to the cause of action alleging lack of informed consent (*see Beard v Brunswick Hosp. Ctr.*, 220 AD2d 550, 551 [1995]; *Spinosa v Weinstein*, 168 AD2d 32, 38-41 [1991]).

On the basis of the foregoing, summary judgment was properly awarded to Dr. Dobrenis and the hospital, and I respectfully vote to affirm the Supreme Court's dismissal of the complaint insofar as asserted against those defendants.