◼ RICHARD BEDARD, an Infant, by His Mother and Natural Guardian, DAWN MELLISH, et al., Appellants, v STEVEN A. KLEIN et al., Defendants, and WINTHROP UNIVERSITY HOSPITAL, Respondent. [930 NYS2d 656]—

In November 1994, the plaintiffs' mother learned that she was pregnant with triplets. Her estimated delivery date was May 6, 1995. On January 14, 1995, the mother underwent a cervical cerclage (a procedure in which the cervix is sutured closed) because of dilation at the internal orifice of her uterus. Thereafter, the mother experienced several episodes of vaginal bleeding and was admitted to the defendant Winthrop University Hospital (hereinafter Winthrop) for observation, bed rest, and the administration of tocolysis, a medication given to stop or prevent labor. The members and employees of the defendant Ira J. Spector, M.D. and Steven A. Klein, M.D., P.C., were the mother's private physicians and became the mother's attending physicians at Winthrop. The attending physicians took care of the mother on a rotational basis and made the decisions regarding her care. Several Winthrop residents and nurses also were involved in the mother's care.

While at Winthrop, the mother continued to have episodes of vaginal bleeding, including one on February 25, 1995. On February 27, 1995, the mother experienced nausea, vomiting, continued vaginal bleeding, and low blood pressure. Dr. Klein performed an emergency caesarian section, and the three plaintiffs were delivered at 30$^1$/2 weeks. The operative report

noted that the cerclage had eroded through the midportion and posterior portion of the cervix. The plaintiffs remained at Winthrop until April 4, 1995. They allegedly sustained brain damage as a result of their premature birth.

The mother commenced this lawsuit on behalf of the plaintiffs against, among others, Winthrop, alleging, inter alia, medical malpractice. Winthrop moved for summary judgment dismissing the complaint insofar as asserted against it, arguing that the obstetrical care rendered to the mother and the plaintiffs during their admission at Winthrop was within the standard of care and dictated by their private attending physicians, and that the Winthrop residents and nurses involved did not exercise any independent medical judgment in their treatment. In opposition to the motion, the plaintiffs argued, inter alia, that triable issues of fact exist as to whether the orders of the attending physicians were so clearly contraindicated by normal obstetrical practice that ordinary prudence required inquiry on the part of the Winthrop staff into the correctness of the orders. The Supreme Court granted the motion, determining that the plaintiffs "failed to establish a question of fact that the staff of Winthrop committed independent acts of negligence or that the attending physicians were contradicted [*sic*] by normal practice." The plaintiffs appeal from the order. We affirm.

Winthrop met its prima facie burden of establishing the absence of any departure from good and accepted obstetrical practice (*see Arkin v Resnick*, 68 AD3d 692, 694 [2009]). In opposition, the plaintiffs failed to raise a triable issue of fact (*see Stukas v Streiter*, 83 AD3d 18, 24 [2011]). The Winthrop staff did not exercise independent judgment over the mother's care (*see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d 1003, 1004 [2010]; *Cerny v Williams*, 32 AD3d 881, 883 [2006]), and the orders of the attending physicians were not so clearly contraindicated by normal obstetrical practice that ordinary prudence would require inquiry into the correctness of the orders (*see Toth v Community Hosp. at Glen Cove*, 22 NY2d 255, 265 n 3 [1968]; *Georgetti v United Hosp. Med. Ctr.*, 204 AD2d 271, 272 [1994]). Accordingly, the Supreme Court properly granted Winthrop's motion for summary judgment dismissing the complaint insofar as asserted against it. Angiolillo, J.P., Dickerson, Chambers and Lott, JJ., concur.