■ ISAIAH MITCHELL, an Infant, by His Mother and Natural Guardian, VIVONNE MITCHELL, Respondent, v PAUL LOGRANO, M.D., Appellant, et al., Defendants. [970 NYS2d 58]—

In an action, inter alia, to recover damages for medical malpractice, the defendant Paul Lograno appeals (1), as limited by his brief, from so much of an order of the Supreme Court, Suffolk County (Pitts, J.), dated August 2, 2011, as denied that branch of the motion of the defendants Paul Lograno, Dennis Strittmatter, and Suffolk Obstetrics & Gynecology, LLP, which was for summary judgment dismissing the complaint and all cross claims insofar as asserted against him, and (2) from an order of the same court dated March 27, 2012, which denied his motion, in effect, for leave to reargue the prior motion.

Ordered that the order dated August 2, 2011, is reversed insofar as appealed from, on the law, and that branch of the motion of the defendants Paul Lograno, Dennis Strittmatter, and Suffolk Obstetrics & Gynecology, LLP, which was for summary judgment dismissing the complaint and all cross claims insofar as asserted against the defendant Paul Lograno is granted; and it is further,

Ordered that the appeal from the order dated March 27, 2012, is dismissed, as no appeal lies from an order denying a motion for leave to reargue; and it is further,

Ordered that one bill of costs is awarded to the defendant Paul Lograno.

Two days before her expected delivery date, Vivonne Mitchell (hereinafter the mother) underwent a non-stress test (hereinafter NST) at the defendant Suffolk Obstetrics & Gynecology, LLP (hereinafter SOG). An NST consists of monitoring the fetal heart beat with an electronic fetal heart monitor while the fetus is not stressed. The NST was "non-reactive," meaning that the fetus's heart rate did not have any accelerations above the baseline. The mother was referred to St. Charles Hospital (hereinafter the hospital) for further evaluation. The mother arrived at the hospital at 11:15 a.m. The defendant Paul Lograno, an employee of SOG, was the on-call doctor at the hospital for SOG patients at the time the mother arrived.

The mother was brought to a labor room for observation. At 12:10 p.m., Lograno reviewed the fetal heart monitor strip, which indicated fetal movement and reactivity. Lograno ordered a biophysical profile for further evaluation of the fetus since the mother had been referred because of a non-reactive NST. The mother returned to the labor room after further testing at 2:35 p.m. Lograno received the results of the biophysical profile and saw the mother at 2:55 p.m.

Lograno discussed with the mother the risks and benefits of certain alternatives, including delivery by cesarean section, and induction of labor through pitocin for vaginal delivery. Lograno admitted the mother to the hospital at 3:00 p.m. with a plan for a vaginal delivery induced by pitocin. Lograno's on-call shift ended at 6:00 p.m., at which time he was relieved by the defendant Dennis Strittmatter. Strittmatter agreed with the plan to deliver with the use of pitocin to induce labor and ordered pitocin at 7:00 p.m. Pitocin was administered at 7:50 p.m. The infant plaintiff was delivered vaginally by Strittmatter at 5:12 a.m. the following day.

The mother, on behalf of the infant plaintiff, commenced this medical malpractice action against Lograno, among others, to recover damages for personal injuries allegedly sustained by the infant plaintiff. The plaintiff alleges that as a result of, inter alia, the failure to perform a cesarian section, he sustained various injuries, including brain damage. Lograno, Strittmatter, and SOG (hereinafter collectively the moving defendants) moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against them. The Supreme Court denied the motion.

"The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of medical practice, and evidence that such deviation or departure was a proximate cause of injury or damage" (*Lau v Wan*, 93 AD3d 763, 765 [2012]; *see Castro v New York City Health & Hosps. Corp.*, 74 AD3d 1005 [2010]; *Deutsch v Chaglassian*, 71 AD3d 718, 719 [2010]; *Geffner v North Shore Univ. Hosp.*, 57 AD3d 839, 842 [2008]). "A defendant physician moving for summary judgment in a medical malpractice action has the initial burden of establishing, prima facie, either the absence of any departure from good and accepted medical practice or that any departure was not the proximate cause of the alleged injuries" (*Lau v Wan*, 93 AD3d at 765; *see Shichman v Yasmer*, 74 AD3d 1316 [2010]; *Larsen v Loychusuk*, 55 AD3d 560, 561 [2008]; *Sandmann v Shapiro*, 53 AD3d 537 [2008]).

Here, Lograno met his initial burden of demonstrating that he did not deviate from accepted medical practice through his deposition testimony and his expert's affidavit (*see Garbowski v Hudson Val. Hosp. Ctr.*, 85 AD3d 724, 726 [2011]). In her affidavit, Lograno's expert, a board-certified obstetrician/gynecologist, Dr. Hilma Yu, opined that, as of the time that Lograno's on-call shift at the hospital was ending, Lograno correctly determined, based on the results of the biophysical profile and the continued fetal heart monitoring tracings, that delivery by cesarean sec-

tion was not yet indicated (*see Lau v Wan*, 93 AD3d at 765; *Sandmann v Shapiro*, 53 AD3d 537 [2008]).

Contrary to the Supreme Court's conclusion, Yu did explain both the significance of a non-reactive stress test and the results of the biophysical profile. Yu fully explained the terminology involved in assessing the fetal heart monitoring strips for fetal well-being versus fetal distress. Yu opined that urgent delivery of the infant plaintiff by cesarean section was not indicated, and it was appropriate and within good and accepted medical practice for Lograno not to deliver the baby, and to admit the mother for delivery with placement back on the external fetal heart monitor.

Yu further stated that from about 3:00 p.m. until Lograno's shift ended at 6:00 p.m., the fetal heart rate and any contractions were appropriately monitored. Yu stated that throughout Lograno's shift, the fetal heart monitoring strips showed that the fetus was doing well and was not in distress since there were accelerations, there were no decelerations, there was good long-term variability, and there was no tachycardia or bradycardia, terms she also explained in her affidavit.

Yu concluded, in sum, that in her opinion, with a reasonable degree of medical certainty, Lograno's care and treatment was appropriate and in accordance with good and accepted medical practice in all respects. Yu stated that all testing, evaluations, and treatment ordered or performed by Lograno were appropriate, and there was no further testing, evaluation, or treatment which he should have ordered or performed.

In opposition, the plaintiff failed to raise a triable issue of fact (*see Cerny v Williams*, 32 AD3d 881, 882 [2006]; *cf. Garbowski v Hudson Val. Hosp. Ctr.*, 85 AD3d at 727). The plaintiff's expert affirmation stated that the fetal heart monitor tracings showed fair to poor long-term fetal heart rate variability from 5:30 p.m. until the time of the delivery at 5:12 a.m. However, the plaintiff's expert never stated that Lograno departed from good and accepted standards of medical care; rather, the plaintiff's expert concluded that *Strittmatter* should have delivered the infant plaintiff through cesarean section by 12:40 a.m. or, at the latest, by 3:00 a.m. Thus, the plaintiff failed to raise a triable issue of fact as to whether Lograno, whose shift ended at 6:00 p.m., departed from good and accepted standards of medical care (*see Cerny v Williams*, 32 AD3d at 882; *cf. Garbowski v Hudson Val. Hosp. Ctr.*, 85 AD3d at 727).

Lograno also established his entitlement to judgment as a matter of law dismissing the cause of action alleging lack of informed consent through the submission of the medical rec-

ords and Lograno's deposition testimony (*see Johnson v Staten Is. Med. Group*, 82 AD3d 708 [2011]; *Luu v Paskowski*, 57 AD3d 856, 858 [2008]; *Aharonowicz v Huntington Hosp.*, 22 AD3d 615, 615 [2005]). The plaintiff failed to raise a triable issue of fact in opposition. The plaintiff's expert only stated that it was a departure for Strittmatter to have failed to recommend and obtain the mother's consent for a cesarean section delivery by 12:40 a.m. or, at the latest, by 3:00 a.m. The plaintiff and the plaintiff's expert did not otherwise address the allegation of lack of informed consent (*see Luu v Paskowski*, 57 AD3d at 858; *Rebozo v Wilen*, 41 AD3d 457, 459 [2007]). Moreover, Lograno did not order or administer the pitocin and did not deliver the infant plaintiff. Therefore, Lograno did not perform a "nonemergency treatment, procedure or surgery" or "a diagnostic procedure which involved invasion or disruption of the integrity of the body" (Public Health Law § 2805-d [2]; *see Lorenzo v Kahn*, 74 AD3d 1711, 1713 [2010]; *Deutsch v Chaglassian*, 71 AD3d at 719-720; *Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]).

Accordingly, the Supreme Court should have granted that branch of the moving defendants' motion which was for summary judgment dismissing the complaint and all cross claims insofar as asserted against Lograno. Mastro, J.P., Hall, Lott and Sgroi, JJ., concur.