■ PAUL MEMOLI, Individually and as Executor of LINDA MEMOLI, Deceased, Respondent, v WINTHROP-UNIVERSITY HOSPITAL et al., Appellants, et al., Defendants. [47 NYS3d 128]—

In an action, inter alia, to recover damages for medical malpractice, etc., the defendant Winthrop-University Hospital appeals, and the defendants Lee Eric Tessler and Neurological Surgery, P.C., separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Nassau County (J. Murphy, J.), entered September 10, 2014, as, upon reargument, adhered to a prior determination in an order dated March 17, 2014, denying those branches of their separate motions which were for summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against each of them.

Ordered that the order entered September 10, 2014, is affirmed insofar as appealed from, with one bill of costs payable by the defendants appearing separately and filing separate briefs.

Linda Memoli (hereinafter the decedent) was brought to Winthrop-University Hospital (hereinafter Winthrop) on October 12, 2008, with a diagnosis of hydrocephalus. That same day, sequential compression devices were placed on her legs to improve blood flow and reduce the risk of deep vein thrombosis (hereinafter DVT). The next day, Lee Eric Tessler, a neurosurgeon and partner of Neurological Surgery, P.C. (hereinafter Neurological Surgery, and together with Tessler the neurology defendants), diagnosed the decedent with a colloid cyst. He successfully removed the cyst on October 15, 2008, and placed an external ventricular drain into the decedent's brain. Postoperative orders included continuation of the sequential compression devices, as well as the prophylactic administra-

tion of heparin (an anticoagulant) to prevent DVT. On October 20, 2008, in anticipation of removing the external ventricular drain, the heparin was discontinued. The ventricular drain was then removed on October 21, 2008, and Tessler did not reinstate the heparin thereafter. The decedent died on October 24, 2008, as a result of a pulmonary embolism.

The plaintiff commenced this action, inter alia, to recover damages for medical malpractice against Winthrop and the neurology defendants, among others. In the order appealed from, the Supreme Court, upon reargument, adhered to its prior determination denying those branches of Winthrop's motion and the neurology defendants' separate motion which were for summary judgment dismissing the first cause of action, which alleged medical malpractice, the third cause of action, which alleged wrongful death, and the fourth cause of action, which was a derivative claim by the plaintiff, insofar as asserted against each of them.

The Supreme Court properly denied the neurology defendants' motion for summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against them. The plaintiff alleges that Tessler's failure to administer heparin to the decedent after the removal of the external ventricular drain resulted in the fatal pulmonary embolism. The neurology defendants established, prima facie, their entitlement to judgment as a matter of law by presenting an expert medical opinion that Tessler did not violate the applicable standard of care by deciding not to reinstate the heparin following the neurological procedure (see Feuer v Ng, 136 AD3d 704, 706 [2016]). Their expert, a neurosurgeon, affirmed that there was no consensus in the neurosurgery community regarding whether anticoagulants should be administered after a neurosurgical procedure because of the concern that it may increase the risk of intracranial hemorrhage. He also affirmed that Tessler acted in accordance with good and accepted medical practices by not administering heparin to the decedent because of the risk of intracranial hemorrhage and because the decedent was no longer confined to bed rest and was able to move about freely.

In opposition, however, the plaintiff's unnamed expert, a board certified neurologist, raised triable issues of fact. Contrary to the neurology defendants' contention, the Supreme Court properly found the plaintiff's expert to be qualified to render an opinion as to the relevant post-operative standard of care (see Lopez v Gramuglia, 133 AD3d 424 [2015]). Based, inter alia, on a review of the decedent's medical records, the

plaintiff's expert opined that the decedent's condition had not improved to the point where heparin was no longer needed, thereby raising triable issues of fact as to whether Tessler properly evaluated the decedent's risk factors for developing DVT (*see Kitt v Okonta*, 143 AD3d 601 [2016]; *Matos v Khan*, 119 AD3d 909 [2014]).

The Supreme Court also properly denied those branches of Winthrop's motion which were for summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against it. Winthrop demonstrated its prima facie entitlement to judgment as a matter of law dismissing these causes of action by submitting an affidavit from an expert neurologist, who opined that its staff appropriately followed the orders of Tessler, the attending physician (*see Bedard v Klein*, 88 AD3d 754, 755 [2011]; *Georgetti v United Hosp. Med. Ctr.*, 204 AD2d 271, 272 [1994]). However, in opposition, the plaintiff raised triable issues of fact as to whether Winthrop's employees committed independent acts of negligence by failing to follow Tessler's order to continue the use of sequential compression stockings following the removal of the external ventricular drain (*see Aronov v Soukkary*, 104 AD3d 623, 625 [2013]). Chambers, J.P., Hall, Miller and Connolly, JJ., concur.