In the Matter of the Estate of HYMAN ROSENBLUM, Deceased. DORIS ROSENBLUM, Respondent; MARLENE ABRAMS, Appellant. [727 NYS2d 193] —Crew III, J. Appeal from an order of the Surrogate's Court of Rensselaer County (Lang, Jr., S.), entered June 5, 2000, which, inter alia, granted petitioner's application to reform the subject notes and mortgages.

Between 1987 and 1991, decedent and petitioner, his wife, acquired title to a parcel of land known as the Gold Dome property located in the Town of East Greenbush, Rensselaer County, which they held as tenants by the entirety. Beginning in 1992, decedent and petitioner subdivided and sold the Gold Dome parcel in three principal transactions. The first and second transactions involved the sale of a 21-lot and 51-lot subdivision, respectively, to Robert Marini Builder, Inc., with the third transaction encompassing the sale of the commercial portion of the parcel to SHS Holding Company. Although the deeds for such transactions, which were prepared by decedent's longtime secretary, Marilyn Keller, evidenced that decedent and petitioner were conveying the property as tenants by the entirety, the notes and mortgages relating to those transactions, which were drafted by Joseph Kay, an attorney who had worked with decedent in the past, did not contain survivorship language. Hence, the notes and mortgages on their face indicated that petitioner and decedent held such instruments as tenants in common.

Following decedent's death in 1996, checks payable to

---

* As a prior employer, Citifloral was charged with a portion of the benefits initially awarded to claimant.

decedent and petitioner or decedent's estate and petitioner were received for the various notes and mortgages and were deposited into the estate checking account. Believing that petitioner was entitled to such payments as decedent's surviving spouse, Keller then issued corresponding checks to petitioner. Upon discovering this arrangement respondent, decedent's niece and sole remaining residuary beneficiary under decedent's last will and testament, objected, contending that one half of the payments received for the Gold Dome property transactions properly belonged to decedent's estate. Petitioner thereafter commenced the instant proceeding seeking, *inter alia*, to reform the notes and mortgages to reflect her right of survivorship in the proceeds from the underlying sales. Following a trial, Surrogate's Court granted petitioner's application to reform the notes and mortgages, prompting this appeal by respondent.

We affirm. As a starting point, we reject respondent's assertion that this proceeding is barred by the terms of decedent and petitioner's antenuptial agreement, pursuant to the terms of which each agreed "to make no claim or demand in respect to the estate of the other party." While it is true that reformation of the notes and mortgages impacts the value of decedent's residuary estate, this proceeding is not a challenge to or an election against the will itself. Rather, petitioner is in effect seeking a ruling as to whether certain assets are properly part of decedent's estate in the first instance. As such, the antenuptial agreement executed by decedent and petitioner does not preclude petitioner from bringing the instant application. On a similar note, we find respondent's assertion that petitioner should be barred from maintaining this proceeding due to "unclean hands" to be unavailing.

Equally unpersuasive is respondent's contention that any testimony given by petitioner, Kay or Keller should have been barred by CPLR 4519, commonly known as the Dead Man's Statute, which precludes a party or person interested in the underlying event from offering testimony concerning a personal transaction or communication with the decedent. " 'The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent [citation omitted]' " (*Friedrich v Martin*, 294 NY 588, 595, quoting *Talbot v Laubheim*, 188 NY 421, 426). As applied to the matter before us, the record reflects that the testimony offered

by petitioner was significantly curtailed by Surrogate's Court and, in any event, does not appear to have played a role in the court's ultimate decision. As to the testimony offered by Keller and Kay regarding decedent's intent in acquiring and selling the Gold Dome property, we find that the respective interests asserted by respondent are far too uncertain to bar such testimony. Accordingly, we find no basis upon which to disturb the rulings made by Surrogate's Court in this regard.

Turning to the merits, in order to overcome the heavy presumption of a tenancy in common created by EPTL 6-2.2 (a), petitioner was required to establish, by clear and convincing evidence, that decedent intended to create a joint tenancy with a right of survivorship with respect to the subject notes and mortgages (see, Matter of Vadney, 83 NY2d 885, 886; Matter of Bonanni, 250 AD2d 1022). Based upon our review of the record as a whole, we are persuaded that petitioner met her burden of proof and, as such, Surrogate's Court properly granted her application to reform the notes and mortgages at issue. Decedent and petitioner initially acquired and subsequently conveyed the Gold Dome parcel as tenants by the entirety. Keller testified at length that it was decedent's intent that the property and subsequent proceeds would provide a nest egg to fund decedent's and petitioner's retirement or, in the event that decedent predeceased petitioner, that such funds would belong to petitioner. Kay, who drafted the notes and mortgages at issue, testified that decedent instructed him that there was to be no change in ownership with respect to the notes and mortgages, i.e., the Gold Dome property had been held by decedent and petitioner as tenants by the entirety and the notes and mortgages were to reflect the same ownership. Despite such instructions, Kay inadvertently omitted the survivorship language from the documents in question—an error that was not discovered until after decedent's death. Although respondent makes much of the fact that this scrivener's error appeared in multiple documents, it is not surprising that once the error was made in the initial set of documents, which served as the model for the subsequent transactions, the error was repeated. In our view, Keller's and Kay's testimony, coupled with the documentary evidence contained in the record, including decedent's will, clearly supports reformation of the notes and mortgages at issue. Respondent's remaining arguments on this point have been examined and found to be unpersuasive.

Cardona, P. J., Spain, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, with costs.