■ In the Matter of the Estate of Doris T. Dippold, Deceased. Ramon P. Hatch et al., Respondents; A. Lee Schaff, Appellant, et al., Respondents. [804 NYS2d 830]—

Carpinello, J. Appeal from a decree of the Surrogate's Court of Cortland County (Ames, S.), entered July 27, 2004, which granted petitioners' application, in a proceeding pursuant to SCPA 209 (4), to determine the rights of the residuary legatees of decedent's estate.

Petitioners are the sister and brother-in-law of Doris T. Dippold (hereinafter decedent), who died in November 2000. Pursuant to the terms of decedent's will, petitioners are residuary beneficiaries of her estate, along with four others. The issue in this proceeding is the proper owner of the proceeds of an annu-

* The denial of plaintiff's motion to reargue is not appealable (*see O'Brien v O'Brien*, 16 AD3d 1015, 1016 [2005]).

ity owned by decedent which had a value in excess of $125,000. The designated beneficiary of this annuity at the time of decedent's death was her estate. Respondent A. Lee Schaff alleges that decedent intended for him to be the beneficiary of this annuity and that the only reason this intent was not effectuated was because of a scrivener's error on the part of decedent's stockbroker three months before her death.[1] Following a trial, Surrogate's Court found the evidence ambiguous and thus refused to reform the annuity as payable to Schaff. Schaff appeals.

We are unpersuaded by Schaff's claim that the decision of Surrogate's Court is against the weight of the evidence. Under *Matter of Vadney* (83 NY2d 885 [1994]) and a legion of other cases (*see e.g. Chimart Assoc. v Paul*, 66 NY2d 570 [1986]; *Nash v Kornblum*, 12 NY2d 42 [1962]; *Matter of Rosenblum*, 284 AD2d 820 [2001], *lv denied* 97 NY2d 604 [2001]; *Koskey v Pacific Indem. Co.*, 270 AD2d 461 [2000]; *Shults v Geary*, 241 AD2d 850 [1997]; *Leavitt-Berner Tanning Corp. v American Home Assur. Co.*, 129 AD2d 199 [1987], *lv denied* 70 NY2d 609 [1987]), the burden on Schaff to achieve a reformation of the annuity was great. He was required to establish by clear and convincing evidence that decedent intended for him to be its beneficiary. Here, the evidence of decedent's intent was controverted and uncertain (*cf. Matter of Vadney, supra; Matter of Rosenblum, supra; Koskey v Pacific Indem. Co., supra*).

The record reveals that decedent had two annuities with the subject stockbroker. The smaller of the two originally named decedent's niece (*see* n 1, *supra*) as the beneficiary. In October 1997, however, she changed the beneficiary on this annuity from her niece to Schaff following their marital discord. Indeed, upon decedent's death, Schaff received the proceeds of this annuity. The larger annuity, however, which is at issue in this proceeding, named decedent's estate as the beneficiary from its inception. In October 1997, decedent also changed the beneficiary on this annuity from her estate to Schaff. But upon depositing a large sum of money into this annuity over a year later, she changed the beneficiary back to her estate. Thus, as of January 1999, the larger annuity named decedent's estate as the beneficiary and the smaller annuity named Schaff.

In the summer of 2000, decedent was in the hospital and asked petitioner Ramon P. Hatch to bring her a copy of her will so she could make changes to it. While going through decedent's papers in search of the will, Hatch came across a card indicating

---

1. Although decedent referred to Schaff as her "nephew," he was actually her nephew-in-law until 1998 when he and her niece divorced.

that the niece was "a beneficiary of something," so he brought it to decedent along with her will. According to Hatch, upon giving decedent the card, she immediately expressed concern because she thought she had changed this "a long time ago." She then asked Hatch to contact her stockbroker to make certain that the niece had been removed as a beneficiary. Hatch did so. It is here where the testimony at trial diverged.

According to Hatch, upon calling the stockbroker's office and being informed that he was not in that day, he left a message about the need to correct the beneficiary on decedent's annuity. According to Hatch, he had no idea at that time that she in fact had two annuities.[2] Notably, the record contains a copy of a telephone message documenting that decedent called the office to "change benef [sic] to—A. Lee Schaff." The stockbroker, on the other hand, claimed that he had a direct conversation with Hatch during which Hatch told him to change the beneficiaries of both annuities to Schaff.

It is undisputed that a change of beneficiary form was completed by the stockbroker's office, sent to decedent and signed by her. The form contained the policy number for the smaller annuity and indicated that the beneficiary was being changed from the "estate" (which had never been the named beneficiary on this annuity) to Schaff (who already was the named beneficiary). A written confirmation thereafter generated by the insurer indicated that it "changed" the beneficiary on the smaller annuity from "Schaff" to "Schaff." The stockbroker did not pick up on this seeming discrepancy prior to decedent's death. Upon her death, the stockbroker sought to have both annuities paid to Schaff only to learn that he was the named beneficiary on only the smaller one. It is this series of events which culminated in the instant proceeding seeking a decree determining ownership of the proceeds of the larger annuity.

Schaff claims that the signed form seeking to change the beneficiary from decedent's estate to him is clear and convincing evidence of her intent and that the wrong policy number was simply written on it by the stockbroker. Coupled with additional testimony that decedent had been heard to say that he was going to be taken care of by the "annuities," Schaff maintains that his significant burden was met in reforming the larger an-

---

2. We find it noteworthy that the stockbroker never spoke directly with decedent during this time period. We also note that Surrogate's Court found that Hatch's recollection of the events was supported by the telephone message, as well as the testimony of his wife who overheard his end of the conversation with the stockbroker's office.

nuity to designate him as its beneficiary. We are unpersuaded for two reasons.

First, the event which set this series of events into motion was decedent's mistaken belief that her niece was still listed as a beneficiary on an annuity. It is beyond dispute that the niece had only been the named beneficiary on the smaller annuity, thus giving credence to petitioners' claim that decedent only intended to correct her misimpression that the niece was still named on this annuity but leave the larger one intact. Otherwise stated, since the niece had *never* been the named beneficiary on the larger annuity, the concern voiced by decedent while in the hospital could *not* have referred to this annuity.

Moreover, the written confirmation of the "change" by the insurer clearly reflects that it was "changing" the beneficiary from "Schaff" to "Schaff" on the smaller annuity. Upon receiving this document, decedent never contacted her stockbroker or the insurer to question the "change," resolve any alleged ambiguity or add Schaff as the beneficiary on the larger annuity. It is undisputed that she was in complete control of her finances at this time and mentally acute.

Thus, the ambiguities surrounding the events do not clearly establish that it was a mere scrivener's error on the part of decedent's stockbroker which can now be rectified by this Court. Rather, whether decedent intended to insure that her niece was no longer a named beneficiary on the only annuity that she had ever been named on or whether decedent intended to change the named beneficiary on the larger annuity from her estate to Schaff is, at best, uncertain. This being the case, it follows that Surrogate's Court correctly ruled that Schaff did not meet his high burden of proof in seeking to reform the annuity (*cf. Cheperuk v Liberty Mut. Fire Ins. Co.*, 263 AD2d 748 [1999]).

Cardona, P.J., Mercure, Crew III and Rose, JJ., concur. Ordered that the decree is affirmed, without costs.