■ ROBERT C. MILLER et al., Respondents, v WEN MEI (IRIS) LU-WHITNEY, as Administrator of the Estate of LAURENCE WHITNEY, Deceased, and as Administrator of the Estate of DANIEL BEN SHMUEL BARRETT, Deceased, Appellant, et al., Defendant. [876 NYS2d 211]—

---

Mercure, J.P. Appeal from an order of the Supreme Court (Ferradino, J.), entered March 20, 2008 in Saratoga County, which, among other things, granted plaintiffs' motion for summary judgment.

This appeal involves a dispute over sculptures created by Daniel Ben Shmuel Barrett (hereinafter decedent), who died in 2003. Plaintiffs assert that, in 1989, they entered into an agreement with decedent that required them to pay him a monthly stipend for a specified period of time in exchange for an undivided one-half interest in certain of decedent's sculptures, which the three men intended to sell for a profit. In addition, decedent and plaintiffs entered into a new agreement in 1991, the purpose of which was to "confirm, update and modify" the 1989 agreement. The 1991 agreement called for five additional payments to decedent, acknowledged total payment to decedent in the amount of $312,000, and indicated that artworks in an annexed schedule were "owned equally by" plaintiffs and decedent. The 90 sculptures covered by the 1991 modification were photographed; each photograph was signed by decedent and plaintiff Robert C. Miller, and dated November 4, 1991, the date of the execution of the written modification. Evidently, three sculptures were sold prior to execution of the 1991 agreement as a result of the efforts of plaintiffs and decedent; most of the pieces, however, remained unsold.

In 2002, decedent's wife, defendant Sonja Ben Shmuel—acting in her capacity as attorney-in-fact for the disabled decedent and on her own behalf—gifted substantially all of decedent's sculptures to their son, Laurence Whitney. The gift expressly included any interest of decedent and Ben Shmuel "in sculpture and artwork co-owned with [plaintiffs]." Following decedent's death, plaintiffs commenced this action against Whitney, as administrator of decedent's estate, and Ben Shmuel. Plaintiffs seek, among other things, return of the sculptures. Defendant Wen Mei (Iris) Lu-Whitney (hereinafter defendant), as administrator of Whitney's estate, was substituted as a party defendant upon Whitney's death in 2006.* Following joinder of issue, plaintiffs moved for summary judgment and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court thereafter granted plaintiffs' motion, denied defendant's cross motion and directed that the sculptures be divided such that plaintiffs would receive 45 of the remaining sculptures, prompting this appeal by defendant.

---

* Lu-Whitney indicates that the action was discontinued against Ben Shmuel.

Defendant asserts that all of the evidence presented by plaintiffs in connection with the agreements or in an attempt to identify which sculptures were included in the agreements is barred by the Dead Man's Statute (*see* CPLR 4519). Furthermore, defendant argues that even assuming that the 1989 and 1991 agreements are "genuine," they are fatally indefinite because the agreements do not adequately identify or describe the 90 sculptures that are purportedly co-owned. Finally, defendant contends that, at the very least, questions of fact exist regarding whether decedent and plaintiffs entered into a joint venture. We disagree with each of these assertions and, thus, we affirm.

The Dead Man's Statute "precludes a party or person interested in the underlying event from offering testimony concerning a personal transaction or communication with the decedent" (*Matter of Rosenblum*, 284 AD2d 820, 821 [2001], *lv denied* 97 NY2d 604 [2001]; *see* CPLR 4519; *Matter of Wood*, 52 NY2d 139, 144 [1981]). The rule is "grounded . . . on the concept that where death has sealed the lips of one of the parties to a personal transaction, the law, for the protection of his [or her] estate and . . . survivors, should and ought to seal the lips of anyone else making a claim against the estate" (*Tepper v Tannenbaum*, 65 AD2d 359, 362 [1978]). While evidence excludable at trial under the Dead Man's Statute may be considered in opposition to a motion for summary judgment so long as it is not the sole evidence proffered (*see Phillips v Kantor & Co.*, 31 NY2d 307, 314 [1972]; *Marszal v Anderson*, 9 AD3d 711, 713 [2004]; *Matter of Lockwood*, 234 AD2d 782, 782 [1996]), such evidence "should not be used to support summary judgment" (*Phillips v Kantor & Co.*, 31 NY2d at 313; *see Acevedo v Audubon Mgt.*, 280 AD2d 91, 95 [2001]).

Nevertheless, and particularly relevant here, we note that the statute does not bar "the introduction of documentary evidence against a deceased's estate . . . [A]n adverse party's introduction of a document authored by a deceased does not violate the Dead Man's Statute, as long as the document is authenticated by a source other than an interested witness's testimony concerning a transaction or communication with the deceased" (*Acevedo v Audubon Mgt.*, 280 AD2d at 95 [citations omitted]; *see Yager Pontiac v Danker & Sons*, 41 AD2d 366, 368 [1973], *affd on op below* 34 NY2d 707 [1974]; *Kiser v Bailey*, 92 Misc 2d 435, 438-439 [1977]). Furthermore, the statute does not prohibit an interested party from testifying against his or her own interest (*see Matter of Tremaine*, 156 AD2d 862, 863 [1989]; *see also Acevedo v Audubon Mgt.*, 280 AD2d at 95; *Brezinski v Brezinski*, 84 AD2d 464, 468 [1982]).

Here, Ben Shmuel—who was decedent's wife, a party defendant and not adverse to the interests of the estates of the deceased or her son, Whitney—conceded in deposition testimony that the signature on the 1991 agreement was that of her husband, thereby authenticating the document (*see Acevedo v Audubon Mgt.*, 280 AD2d at 95). As noted above, that document unambiguously sets forth plaintiffs' expenditure of $312,000 in exchange for an undivided one-half interest in artworks identified in a schedule that was to be annexed to the agreement. While the parties dispute whether an exhibit of 90 photographs maintained by Miller is, in fact, the schedule referenced in the agreement, Ben Shmuel testified that pursuant to their arrangement with decedent, plaintiffs obtained co-ownership of between 50 and 100 of decedent's sculptures in exchange for payment of money. Ben Shmuel also submitted an affidavit acknowledging the existence of an agreement, pursuant to which plaintiffs "were to use their business skills to help promote, market and sell the sculptures." Ben Shmuel described plaintiffs' activities in marketing the sculptures through private offerings and gallery shows, and she indicated that any proceeds from the sale of the sculptures were to be split equally between plaintiffs and decedent.

Moreover, the gift documents to Whitney—upon which defendant relies to establish her ownership of the sculptures—expressly acknowledged that the art work was co-owned with plaintiffs, and Whitney testified that he was aware that plaintiffs "did business with" decedent and co-owned sculptures pursuant to an agreement with decedent. Indeed, Whitney conceded during his deposition that he found pieces of sculpture that he believed to be co-owned by plaintiffs, along with paperwork scattered around decedent's house and office that included 65 signed photographs of the co-owned sculptures. Whitney further admitted that 62 of those photographs are included in Miller's schedule of 90 photographs. Finally, Miller submitted affidavits regarding his maintenance of business records in connection with the agreement—a description of "an independent act which cannot be considered testimony 'concerning a personal transaction or communication' with decedent" (*Trotti v Estate of Buchanan*, 272 AD2d 660, 662 [2000] [citation omitted]; *see Durazinski v Chandler*, 41 AD3d 918, 920 [2007])—including the schedule of 90 photographs annexed to the 1991 agreement that both he and decedent signed and that bear the date of the 1991 agreement. While Miller's schedule contains 28 photographs that were not duplicated in Whitney's records, Ben Shmuel authenticated decedent's signature on the back of those additional photographs.

Given the foregoing evidence, which is not barred by the Dead Man's Statute, we agree with Supreme Court that plaintiffs established prima face entitlement to summary judgment. Specifically, plaintiffs established that they and decedent had entered into a business enterprise or joint venture, i.e., a " 'special combination of two or more persons where in some specific venture a profit is jointly sought' " (*Gramercy Equities Corp. v Dumont*, 72 NY2d 560, 565 [1988], quoting *Forman v Lumm*, 214 App Div 579, 583 [1925]), involving the funding, creation and marketing of the 90 identified sculptures (*see Ackerman v Landes*, 112 AD2d 1081, 1082 [1985]; *Chalmers v Eaton Corp.*, 71 AD2d 721, 722 [1979]; *see also Campo v 1st Nationwide Bank*, 857 F Supp 264, 272 [1994]). In response, defendant submitted no evidence to create a triable issue of fact, arguing instead that the Dead Man's Statute bars all of plaintiffs' proof and offering only speculation and conjecture regarding the agreements and plaintiffs' possession of the 90 signed and dated photographs. Inasmuch as her arguments regarding the Dead Man's Statute are meritless and "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to defeat a motion for summary judgment (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), Supreme Court properly granted plaintiffs' motion and denied defendant's cross motion.

Defendant's arguments, to the extent that they are not otherwise addressed herein, have been considered and found to be lacking in merit.

Rose, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.