Order, Supreme Court, New York County (Carol R. Edmead, J.), entered October 9, 2012, which denied the motion of defendant New York City Housing Authority for summary judgment dismissing the complaint against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Housing Authority dismissing the complaint.
Defendant Housing Authority made out a prima facie case in support of its motion for summary judgment dismissing the complaint by producing records maintained in the ordinary course of business that established that the entrance door to the subject building was in good working order on the date plaintiff was assaulted. Plaintiffs burden to rebut a prima facie case for summary judgment entails not simply coming forward with some evidence that the lock was defective but demonstrating that between the time the lock was found to be in good condition when inspected that morning and 3:30 p.m. when plaintiffs assailants entered the premises, the Housing Authority had reason to be aware of the alleged defect in sufficient time to afford it a reasonable opportunity to take corrective action. No such proof has been tendered, and the complaint must be dismissed.
The record includes the deposition testimony of Enos McKoy, the Housing Authority’s assistant building superintendent for the building where the assault took place (the premises). McKoy stated that the 13-story building is part of a large development and that he received daily reports regarding the condition of the entry door and lock, which were inspected every morning. If a *485 problem were noted, it was his duty to generate a work ticket for the necessary repair. The report dated March 3, 2005, the date of the assault, was blank, indicating that nothing was wrong with the entry door or lock. Supreme Court properly held that McKoy’s authentication of his signature on the document renders it admissible (Acevedo v Audubon Mgt., 280 AD2d 91, 95 [1st Dept 2001]; see Miller v Lu-Whitney, 61 AD3d 1043, 1045 [3d Dept 2009]).
A search for work tickets preceding the incident revealed that repairs to the entry door lock were last performed on October 29, 2004. No work tickets involving the door lock were issued from that date through the last date searched, which was March 7, 2005. In addition, the caretaker’s log book showed that no problems were found and no complaints were received concerning the door and lock for the period from March 2 through March 5, 2005.
Plaintiff testified that she lived in the same development as her aunt. On the afternoon of March 3, 2005, she returned home from school by bus, intending to go to her aunt’s apartment, which was located on the seventh floor of the building that adjoins the premises. She entered the lobby using her key and went to the elevator. Realizing that it was not running, she decided to go to the premises, which is structurally joined to the building in which her aunt resides, then take the elevator to the seventh floor and walk across to her aunt’s apartment. After using her key to enter the lobby of the premises, plaintiff was deterred by the presence of two men, both in their mid-20s, standing in front of the elevator. She stated that she did not “trust anybody in that building” and declined their invitation to enter the elevator.
Plaintiff went outside and waited until she saw two elderly Hispanic women enter the premises, likewise using a key. While waiting for the elevator with the two women, plaintiff testified that she “heard the popping sound from the front door” and saw the same two men enter. While she did not observe how they gained entry, she stated that “the door is usually broken, like, the lock is a magnet and usually people to get inside the building they would pop the door open.” Asked if that was “something a girl can’t do,” she responded, “Well, I never tried it.”
All five persons got onto the elevator when it arrived, and plaintiff pressed the button for the seventh floor. The two elderly women got off on a lower floor, while the two men remained with plaintiff. When the doors opened at the seventh floor, the men physically prevented plaintiff from leaving. At the *486 top floor, they forced her into a stairway leading to the roof, where one of the men assaulted her, while the other restrained her. The attack continued until the men were scared off by the sound of a door, whereupon they fled down the stairs.
Plaintiffs mother gave conflicting testimony concerning how she entered the aunt’s building on the date of the assault, first stating that she used her key and then asserting that she was able to enter without using her key, although she conceded having used her key the day before. While credibility is not a consideration on a motion for summary judgment, it should be noted that her testimony concerns the building in which the apartment occupied by plaintiffs aunt is located, not the adjoining building, the premises in which the assault occurred. Similarly, that plaintiffs mother reported the defective condition to “an Indian guy” in maintenance “at nighttime” on the day her daughter was attacked has no bearing on whether the Housing Authority had prior notice of the allegedly defective lock at the premises.
The record establishes that as of the morning of March 3, 2005, the Housing Authority, as landlord of the premises, had discharged its common-law duty to protect the occupants, having taken the requisite minimal security precautions against reasonably foreseeable criminal acts by providing a locking entry door (James v Jamie Towers Hous. Co., 99 NY2d 639, 641 [2003]). There is no proof contradicting the documentary evidence that the entry door and lock were in good working order at the time they were inspected, which Enos McKoy testified had taken place that morning. Plaintiff herself used a key just prior to the incident, as did the two elderly women who entered immediately before the two assailants. The only evidence that the lock was malfunctioning at the time the two men gained entry is plaintiffs testimony that she heard a “popping” sound. Even accepting her conclusion that the sound is invariably associated with someone’s success in forcing the entry door lock, the record is devoid of evidence that the lock had been rendered defective at some earlier point in time. And even assuming that it was previously tampered with, thereby allowing entry without the use of a key, the material question is whether the condition was “visible and apparent” and existed for a sufficient period of time that Housing Authority employees should have become aware of it and effected remedial measures (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]). Specificity of proof is required. As the Court of Appeals emphasized in Gordon, “neither a general awareness that litter or some other dangerous condition may be present nor the fact that plaintiff *487 observed other papers on another portion of the steps approximately 10 minutes before his fall is legally sufficient to charge defendant with constructive notice of the paper he fell on” (id. at 838 [citation omitted]; see also Torres v New York City Hous. Auth., 85 AD3d 469 [1st Dept 2011]).
Crediting testimony that the entry door to the premises could be “popped” open, such evidence does not even serve to charge the Housing Authority with “a general awareness” of a defective condition. While the witnesses may have known about the practice of gaining entry without using a key, there is no evidence that the Housing Authority was ever informed that the lock could be forced in this manner. In the more than seven years since the filing of plaintiffs bill of particulars, its allegation that such “information was given by numerous tenants, as well as the tenants’ association and that the information was received by the housing office and by employees of the housing authority” remains unsupported by any competent proof
While an assault on a young victim is most disturbing, a possessor of land is not an insurer of the safety of those who come onto its premises (Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 519 [1980]). It remains that plaintiffs injuries were the immediate and proximate result of a criminal attack committed by third parties, for whose actions the landlord is not responsible absent a failure to provide “even the most rudimentary security” of an entry door lock (Jacqueline S. v City of New York, 81 NY2d 288, 295 [1993]). In the absence of proof that the Housing Authority contributed to the injuries sustained by plaintiff, a visitor to its premises, by failing to timely repair a “visible and apparent” defect in its front-door lock, no liability can be imposed (Gordon, 67 NY2d at 837). Concur — Gonzalez, P.J., Tom, Sweeny, Renwick and Richter, JJ.