Wright v Morning Star Ambulette Servs., Inc. (2019 NY Slip Op 02381)





Wright v Morning Star Ambulette Servs., Inc.


2019 NY Slip Op 02381


Decided on March 27, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 27, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JEFFREY A. COHEN
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2017-05049
 (Index No. 1533/14)

[*1]Kyristel Wright, etc., respondent, 
v
Morning Star Ambulette Services, Inc., et al., defendants, Robert Meyerson, etc., appellant.


Aaronson Rappaport Feinstein & Deutsch, LLP, New York, NY (Steven C. Mandell of counsel), for appellant.
Kerner & Kerner, New York, NY (Kenneth T. Kerner of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, lack of informed consent, and wrongful death, etc., the defendant Robert Meyerson appeals from an order of the Supreme Court, Kings County (Carolyn E. Wade, J.), dated March 10, 2018. The order denied that defendant's motion for summary judgment dismissing the amended complaint insofar as asserted against him.
ORDERED that the order is reversed, on the law, with costs, and the motion of the defendant Robert Meyerson for summary judgment dismissing the amended complaint insofar as asserted against him is granted.
On April 28, 2014, the plaintiff's decedent underwent arthroscopic surgery on his knee at the defendant New York Methodist Hospital (hereinafter the Hospital). The procedure, which was performed by the defendant Robert Meyerson, went without incident. The surgery was performed under general anesthesia, and the defendant Joel Yarmush was the attending anesthesiologist during the surgery. As the decedent was being transferred from the operating table to a stretcher, he became unresponsive and apneic, and went into cardiac arrest. Efforts to resuscitate the decedent failed, and he died in the operating room. The decedent suffered from, among other conditions, morbid obesity, obstructive sleep apnea, and anxiety.
The plaintiff commenced this action against, among others, Meyerson, Yarmush, and the Hospital, asserting causes of action against those defendants to recover damages, inter alia, for medical malpractice, lack of informed consent, and wrongful death. The plaintiff alleged that Meyerson rendered negligent medical care and treatment, including, among other things, performing arthroscopic surgery and administering anesthesia and/or an endotrachial tube, which were contraindicated in light of the decedent's underlying conditions. Meyerson moved for summary judgment dismissing the amended complaint insofar as asserted against him. The Supreme Court denied the motion, finding that issues of fact existed. Myerson appeals.
" In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, [*2]and that such departure was a proximate cause of the plaintiff's injuries'" (Jagenburg v Chen-Stiebel, 165 AD3d 1239, 1239, quoting Stukas v Streiter, 83 AD3d 18, 23). A physician seeking summary judgment dismissing a complaint alleging medical malpractice "must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby" (Stukas v Streiter, 83 AD3d at 24). Where the defendant has satisfied that burden, a plaintiff must "submit evidentiary facts or materials to rebut the defendant's prima facie showing" (id. at 30). " Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause'" (Novick v South Nassau Communities Hosp., 136 AD3d 999, 1000, quoting Lyons v McCauley, 252 AD2d 516, 517; see Whitnum v Plastic & Reconstructive Surgery, P.C., 142 AD3d 495, 497).
"To establish a cause of action [to recover damages] for malpractice based on lack of informed consent, plaintiff must prove (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury" (Spano v Bertocci, 299 AD2d 335, 337-338 [internal quotation marks omitted]; see Public Health Law § 2805-d[1]; Whitnum v Plastic & Reconstructive Surgery, P.C., 142 AD3d at 497-498; Khosrova v Westermann, 109 AD3d 965).
Here, Meyerson established his prima facie entitlement to judgment as a matter of law dismissing the medical malpractice cause of action insofar as asserted against him by submitting a detailed expert affidavit that was based on the decedent's medical records, demonstrating that the surgery Meyerson performed was in accordance with good and accepted standards of medical practice and was not a proximate cause of the decedent's death (see Mitchell v Lograno, 108 AD3d 689, 692-693; Poter v Adams, 104 AD3d 925, 926; DiGeronimo v Fuchs, 101 AD3d 933, 936). Meyerson also established his prima facie entitlement to judgment as a matter of law dismissing the lack of informed consent cause of action insofar as asserted against him by submitting the affidavit of his expert, portions of his deposition testimony and the deposition testimony of Yarmush and Pradeep Balasubramaniam, a resident anesthesiologist, and documentary evidence, including the written consent forms signed by the decedent. These submissions demonstrated that Meyerson did not fail to obtain the decedent's informed consent to the surgery, that he did not administer anesthesia, and that it was not his duty as the surgeon to inform the patient of the risks and alternatives of anesthesia (see Public Health Law § 2805-d; Zapata v Buitriago, 107 AD3d 977; Matos v Schwartz, 104 AD3d 650, 652; Johnson v Staten Is. Med. Group, 82 AD3d 708, 709).
The plaintiff contends that Meyerson cannot rely upon the portion of his expert's affidavit which states that the decedent was aware of the risks of the procedure because he signed a consent form for a similar procedure in 2012, because this evidence would be inadmissible pursuant to CPLR 4519, the so-called Dead Man's Statute. CPLR 4519 "precludes a party or person interested in the underlying event from offering testimony concerning a personal transaction or communication with the decedent" (Matter of Rosenblum, 284 AD2d 820, 821; see CPLR 4519; Matter of Wood, 52 NY2d 139, 144).
While evidence excludable at trial under CPLR 4519 may be considered in opposition to a motion for summary judgment so long as it is not the sole evidence proffered (see Phillips v Kantor & Co., 31 NY2d 307, 314), such evidence "should not be used to support summary judgment" (id. at 313; see Beyer v Melgar, 16 AD3d 532, 533; Friedman v Sills, 112 AD2d 343). However, the statute does not bar "the introduction of documentary evidence against a deceased's estate. . . . [A]n adverse party's introduction of a document authored by a deceased does not violate the Dead Man's Statute, as long as the document is authenticated by a source other than an interested witness's testimony concerning a transaction or communication with the deceased" (Acevedo v Audubon Mgt., 280 AD2d 91, 95; see Miller v Lu-Whitney, 61 AD3d 1043, 1045-1046; Yager Pontiac v Danker & Sons, 41 AD2d 366, 368, affd 34 NY2d 707). Inasmuch as the expert's affidavit as to the decedent's execution of the form was predicated upon the medical records, which contained the decedent's consent form for the prior surgery and on which the expert relied, and the records [*3]were properly authenticated and submitted on the motion, Meyerson properly relied upon the expert opinion to support his motion (see People v Ortega, 15 NY3d 610, 617; Butler v Cayuga Med. Ctr., 158 AD3d 868, 873). Accordingly, Meyerson's submissions were sufficient to shift the burden to the plaintiff to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324).
In response, the plaintiff proffered only the affirmation of her attorney, which failed to raise a triable issue of fact in opposition to Meyerson's prima facie showing of entitlement to judgment as a matter of law dismissing the medical malpractice cause of action insofar as asserted against him. The affirmation did not address or specifically oppose that branch of the motion which was for summary judgment dismissing that cause of action insofar as asserted against Meyerson (see Rebozo v Wilen, 41 AD3d 457, 459; see also Raucci v Shinbrot, 127 AD3d 839, 843; Bhim v Dourmashkin, 123 AD3d 862; Deutsch v Chaglassian, 71 AD3d 718, 719-720). Moreover, the plaintiff failed to offer any competent medical evidence to support her allegation of medical malpractice and, in particular, did not present any expert testimony that arthroscopic knee surgery was contraindicated or that the care and treatment rendered by Meyerson departed from the accepted standards of medical practice (see Alvarez v Prospect Hosp., 68 NY2d at 324-325). In that regard, "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat [a] defendant['s] . . . summary judgment motion" (id. at 325; see Salvia v St. Catherine of Sienna Med. Ctr., 84 AD3d 1053, 1053-1054).
The plaintiff also failed to raise a triable issue of fact in opposition to Meyerson's prima facie showing of entitlement to judgment as a matter of law dismissing the lack of informed consent cause of action insofar as asserted against him (see Public Health Law § 2805-d). The plaintiff's submissions failed to raise a triable issue of fact as to whether Meyerson failed to obtain the decedent's consent to the arthroscopic surgery or whether it was his duty as the surgeon to obtain the decedent's informed consent to the administration of anesthesia and/or an endotrachial tube (see Public Health Law § 2805-d[2]; see also Alvarez v Prospect Hosp., 68 NY2d at 324-325; Bhim v Dourmashkin, 123 AD3d 862).
Inasmuch as the wrongful death and loss of consortium causes of action are premised upon the medical malpractice and lack of informed consent causes of action, Meyerson's motion for summary judgment dismissing the amended complaint insofar as asserted against him should have been granted in its entirety (see generally Wittrock v Maimonides Med. Ctr.-Maimonides Hosp., 119 AD2d 748).
MASTRO, J.P., COHEN, MALTESE and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court