Weber v Sharma (2024 NY Slip Op 06001)

Weber v Sharma

2024 NY Slip Op 06001

Decided on November 27, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
JOSEPH J. MALTESE
LARA J. GENOVESI
CARL J. LANDICINO, JJ.

2021-01985
 (Index No. 4176/18)

[*1]Brian Weber, etc., appellant, 
v
Puja Sharma, etc., et al., respondents.

Sheldon E. Green, P.C. (The Law Office of Philip P. Vogt, PLLC, New York, NY [Philip John Vogt], of counsel), for appellant.
Feldman, Kleidman, Coffey & Sappe, LLP, Fishkill, NY (Terry D. Horner of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from an order of the Supreme Court, Orange County (Sandra B. Sciortino, J.), dated March 8, 2021. The order granted the defendants' motion for summary judgment dismissing the amended complaint.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendants' motion which was for summary judgment dismissing the amended complaint insofar as asserted against the defendants Viral Ras Sheth and Crystal Run Healthcare, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, with costs to the plaintiff.
The plaintiff's decedent, Amanda Weber, was treated at Crystal Run Healthcare (hereinafter Crystal Run) on January 18, 2018. At Crystal Run, the decedent was first seen by a family practitioner, Puja Sharma. The decedent complained of symptoms, including chest pain or pressure and pain of the upper extremities. Sharma performed an examination and certain tests, including an electrocardiogram. Sharma then referred the decedent to Viral Ras Sheth, a cardiologist at Crystal Run.
Sheth saw the decedent on January 18, 2018. The medical records prepared by Sheth indicated that Sheth prescribed Norvasc and aspirin and directed a nurse to administer a dose of nitroglycerine to the decedent. The medical records also indicated that the decedent "decline[d] transfer to ER for Trops," or troponin testing to detect heart damage.
After Sheth examined the decedent, the decedent returned home. The decedent suffered a heart attack at home several hours later, and, despite efforts at emergency resuscitation and treatment, she died that night.
The plaintiff, individually and as executor of the decedent's estate, commenced this action against Sharma, Sheth, and Crystal Run, inter alia, to recover damages for medical malpractice. After discovery was completed, the defendants moved for summary judgment [*2]dismissing the amended complaint. In an order dated March 8, 2021, the Supreme Court granted the motion. The plaintiff appeals.
"'The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury'" (Sunshine v Berger, 214 AD3d 1020, 1022, quoting Mendoza v Maimonides Med. Ctr., 203 AD3d 715, 716 [internal quotation marks omitted]). A hospital or medical practice may be held liable under the doctrine of respondeat superior for the malpractice of an employee (see Ciceron v Gulmatico, 220 AD3d 736, 738; Goffredo v St. Luke's Cornwall Hosp., 194 AD3d 699, 700).
"'On a motion for summary judgment dismissing the complaint in a medical malpractice action, the defendant . . . has the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby'" (Sunshine v Berger, 214 AD3d at 1022, quoting Dye v Okon, 203 AD3d 702, 703; see Clarke v New York City Health & Hosps., 210 AD3d 631, 632). Where a defendant makes a prima facie showing on both elements, "the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element" (Stukas v Streiter, 83 AD3d 18, 25). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519).
As an initial matter, contrary to the defendants' contention, the deposition testimony and affidavits of Sharma and Sheth were barred by CPLR 4519, otherwise known as the Dead Man's Statute. Pursuant to CPLR 4519, "[u]pon the trial of an action . . . , a party or a person interested in the event . . . shall not be examined as a witness in his [or her] own behalf or interest . . . against the executor, administrator or survivor of a deceased person or the committee of a person with a mental illness . . . concerning a personal transaction or communication between the witness and the deceased person or person with a mental illness, except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his [or her] own behalf, or the testimony of the person with a mental illness or deceased person is given in evidence, concerning the same transaction or communication." Generally, evidence that would be inadmissible at trial under the Dead Man's Statute may not be relied upon to establish a prima facie entitlement to judgment as a matter of law (see Butler v Cayuga Med. Ctr., 158 AD3d 868, 873; Miller v Lu-Whitney, 61 AD3d 1043, 1045; Beyer v Melgar, 16 AD3d 532).
Both Sharma and Sheth are parties hereto and are thereby interested in the outcome of this action. Consequently, their deposition testimony and affidavits that were largely based on their communications with the decedent could not be considered as evidence in support of the defendants' motion for summary judgment (see Castellotti v Free, 223 AD3d 431, 431-432; Grechko v Maimonides Med. Ctr., 188 AD3d 832, 835). However, the deposition testimony of the registered nurse, who rendered certain care and spoke to the decedent, was admissible, as the nurse is not an interested party within the meaning of the Dead Man's Statute (see Matter of Thomas, 124 AD3d 1235, 1238; Matter of Rosenblum, 284 AD2d 820, 821). In addition, the medical records were admissible as pertinent to the diagnosis and treatment of the decedent (see Berkovits v Chaaya, 138 AD3d 1050, 1051; see also Butler v Cayuga Med. Ctr., 158 AD3d at 873).
Nevertheless, the defendants established, prima facie, that Sharma was entitled to judgment as a matter of law dismissing the amended complaint insofar as asserted against her. The gravamen of the plaintiff's claim is that the defendants failed to advise the decedent of the potential gravity of her condition and need for immediate hospital treatment. The admissible evidence established that Sharma examined the decedent, performed testing, including an electrocardiogram, and then referred the decedent to Sheth, a cardiologist. Inasmuch as the evidence demonstrated that Sharma, a family practitioner, instructed the decedent to "follow up [with the] cardiology" department, which the decedent did, and that she did not have further contact with the decedent, established that Sharma did not depart from accepted medical practice. In opposition, the plaintiff failed to raise a triable issue of fact.
However, the defendants failed to establish, prima facie, that Sheth and Crystal Run [*3]were entitled to judgment as a matter of law dismissing the amended complaint insofar as asserted against them (see Huichun Feng v Accord Physicians, PLLC, 194 AD3d 795, 797; Refuse v Wehbeh, 167 AD3d 956, 958-959). The medical records prepared by Sheth indicated that the decedent complained of chest pressure and pain radiating to her neck and arms bilaterally. The decedent had mildly elevated blood pressure on the day of her visit. Sheth's medical records also indicated an "Assessment" of coronary artery spasm and a family history of "coronary artery disease." Sheth's plan, as per the medical records, was to begin Norvasc and aspirin, and to "schedule a follow-up visit [in] 1 Day" for an echocardiogram. Although Sheth's medical records stated that the decedent "decline[d] transfer to ER for [t]rop[onin]" testing, the records did not indicate that he specifically counseled the decedent as to a potentially serious medical crisis requiring immediate emergency hospital monitoring and treatment. The records contained no mention of any possible proposed hospital treatment, apart from troponin testing, nor as to any discussion of that matter with the decedent.
The nurse who treated the decedent on January 18, 2018, testified at her deposition that she advised the decedent to heed Sheth's advice to go to a hospital emergency department, as reflected in the nurse's chart notes. Contrary to the plaintiff's contention, the nurse's notes, written within a reasonable time of the relevant events, were admissible (see CPLR 4518[a]) and were not incredible as a matter of law (see generally Zapata v Buitriago, 107 AD3d 977, 979). However, the nurse did not testify that she specifically discussed with the decedent any specifics of her possible condition, nor do the medical records reflect any such detailed discussion.
As the defendants failed to eliminate all triable issues of fact, the Supreme Court should have denied that branch of their motion which was for summary judgment dismissing the amended complaint insofar as asserted against Sheth and Crystal Run, regardless of the sufficiency of the plaintiff's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
CHAMBERS, J.P., MALTESE, GENOVESI and LANDICINO, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court